## LEWIS COTHERMAN v. ESTATE OF SOLOMON COTHERMAN.

*Exclusion of testimony of claimants against decedent's estate—Evidence of settlement—Exceptions.*

1. The statutory rule excluding the testimony of a party where the facts were known only to himself and to one who, if living, would be the adverse party, does not prevent the wife of a claimant against an estate from testifying as to her husband's claim.

2. The fact that a claim is apparently outlawed does not necessarily exclude evidence thereon; the question whether or not it is barred is one to be dealt with when the testimony is all in.

3. A claimant against an estate is a competent witness as to matters not shown to be known only to deceased himself. And *it seems* that if the adverse party consents he can testify as to matters known to them alone.

4. A settlement of previous accounts is not to be conclusively presumed from the giving of a note by one party to the other. Whether it furnishes a prima facie presumption or is only a question for the jury —Q.

53 MICH—30

5. Exceptions, though covered by assignments of error, will not be
   noticed on review if not made to the trial judge and noted in the
   bill of exceptions.

Error to St. Joseph.   (Pealer, J.)   Oct. 29.—Nov. 19.

Appeal from commissioners on estate. The executors
bring error. Affirmed.

*O. F. Bean* for claimant.

*Howell, Carr & Barnard* for the defendant estate.

CAMPBELL, J.   Plaintiff, who is a son of the deceased,
presented a claim against the estate, which was disallowed,
and on appeal to the circuit court he obtained a verdict
for a part of it. The executors bring error. The errors
assigned are somewhat numerous, but so far as they rest on
exceptions brought to the notice of the judge they relate to
but a few matters, and may be grouped together so as to pre-
sent but a few points.

Some objections were made to the action of the court in
allowing the appeal papers to be perfected. But as the
action came within repeated decisions of this Court, we need
not consider it.

The claim consisted of a series of charges extending back
to 1870, 1871 and 1872, with an interval of over six years
between these and the next credit in 1878, and the only trans-
action in this interval was a credit to deceased for plowing
in 1876, no amount being carried out.

The items of the account were all entered on paper, as
she swears contemporaneously, by Margaret Cotherman, wife
of plaintiff, he being somewhat illiterate. Some of them
were sworn to by herself, and some by other witnesses. The
item of plowing was sworn to by various persons, and plain-
tiff was allowed to testify to the amount of land plowed
and to the value of the plowing, but nothing more.

It was shown that about a year after the date of the last
charge, plaintiff made a note to his father for between five
and six hundred dollars, which had not matured, but was

payable without interest in January, 1888. Defendants declined to introduce it as a defense, but claimed it was evidence that there had been a settlement and balance found due deceased.

When Margaret Cotherman was sworn as a witness only two exceptions were taken to her testimony. One was that she was incompetent to testify to matters within the knowledge of deceased, and the other that some of the items she proved were more than six years old, and barred by the statute of limitations.

The first of these objections has no force. She was not a party to the litigation in any way, and was on the same footing with any other witness. The second objection was also untenable. The items were not inadmissible, but they could not be recovered unless shown to be out of the operation of the statute. That question was one to be dealt with when the testimony was all in, and was so dealt with by charges which were excepted to.

Plaintiff was a competent witness to matters not shown to be within his father's knowledge. The testimony concerning the plowing showed that the plowman did all his work in the absence of decedent, and the objection did not apply.

There was testimony to go to the jury upon all the items, and it was not excepted to, except as before mentioned. The court granted the instruction prayed for, that the jury should not act upon any testimony of Mrs. Cotherman depending on what her husband told her, but must act on evidence from persons cognizant of the facts. This charge was twice given,— once when presented as a request, and again after the charge was finished, when a juror made an inquiry of the court, which led the court to repeat it again, precisely as desired.

The only exceptions to the substance of the charge are those which complain of the rulings concerning the statute of limitations, and the refusal to charge that the note mentioned must be presumed to have been given in full settlement of accounts.

Upon the effect of this note the court charged the jury quite fully that they were to determine from all the facts

whether it was or was not a settlement, and should they find it so they must give a verdict for the estate. The exception is to the refusal to charge that it must be held as a settlement as matter of law.

We find no support for this broad doctrine in the authorities, and nothing was cited to sustain it. Whatever we might be disposed to think of the probabilities, it was a question of fact and not of law. From the amount of the verdict it is impossible to tell how much, if any, of the early items previous to 1878 was allowed. Most of them must have been rejected, if not all. But we cannot say that the statute is not in question on the record as it stands, and the rulings are material.

It was, we think, for the jury to say whether there had been a running account during the period in question. The relations of the parties were such that laxity of dealing and settlement would not be unnatural, and was certainly possible. The inability of the plaintiff to be sworn without the consent of defendant makes it impossible to question him on that subject, or on the transaction out of which the note grew, the evidence of which, if existing, is probably in the hands of the estate. Whatever any one may think of the probabilities, they were all in the hands of the jury, and the finding indicates that, whether right or wrong, their verdict was not given without consideration of the items. We cannot substitute our possible views for theirs, if we should hold different impressions.

The assignments of error cover several objections not covered by exceptions. No exception can be noticed which was not made to the judge and noted in the bill.

The judgment should be affirmed.

SHERWOOD, J. concurred.

CHAMPLIN, J. Solomon Cotherman died testate February 5, 1883. Defendants are his executors. Commissioners to examine and allow claims against his estate were duly appointed by the probate judge of St. Joseph county; and among the claims presented to them and disallowed was that

of the plaintiff, who appealed therefrom to the circuit court where a trial was had before a jury, which resulted in a verdict for the plaintiff. The case comes here by writ of error.

The claim against the estate, as presented to the commissioners, consisted of an account with debit and credit items. Those on the debit side commenced in 1870, and contain a single charge for that year; two in 1871; one in the month of May, 1872; five in 1878, the first bearing date September 10th of that year; thirty-one in 1879; and nineteen in 1880, the last charge bearing date December 13th of that year. Those on the credit side commenced in 1868, a single credit being given that year; one in 1869; two in 1871; in 1876 there is a single credit as follows: "1876, by plowing,"—no time in the year being mentioned, and no amount credited therefor. There are six credits in 1879 and three in 1880, the last item bearing the date of October 9th.

It will be seen that the continuity of the account is made to depend upon the credit item, in 1876, of plowing, and the date at which it occurred, for the reason that between May, 1872, and September 10, 1878, there are no items charged against the estate in plaintiff's account, a period of over six years and three months. The debit items from 1870 to and including May, 1872, amounted to $320. It was claimed by the defendants that these items, and the amounts charged therefor, were barred by the statute of limitations. To prevent the operation of the statute it became necessary for the plaintiff to prove the item of credit for plowing in 1876. The following is all the evidence there was introduced upon the trial concerning this item. On the direct examination of Mrs. Cotherman, the wife of plaintiff, the counsel for plaintiff asked this question:

"*Question.* And in September, what do you know of the old gentleman doing some plowing for him on this account? *Answer.* He sent a boy to plow, and furnished a team."

The next witness was James Snyder, who had formerly lived in the family of Solomon Cotherman until he was sixteen years old, and staid there winters until he got married.

He was in his twenty-eighth year at the time of the trial in 1884, and consequently was in his twentieth year in 1876; and unless the plowing was done in the winter season, it is not probable that it was done by him that year. His testimony upon the subject is as follows:

Direct examination :—*Question.* Do you remember of plowing there for Lewis at the old gentleman's request?

*Answer.* Yes, sir; I plowed there.

*Q.* In the year 1876?

*A.* I plowed there. I could not tell you what year it was; for I don't remember anything about it.

*Q.* About what year, as near as you can now tell?

*A.* I don't know.

*Q.* How long a time did you plow there?

*A.* I was there about four weeks, and probably worked about two of them. Part of the time I worked, and part of the time I played.

*Q.* Whose team did you have?

*A.* Solomon Cotherman's.

On his cross-examination this testimony was elicited:

*Question.* Is it not a fact that all the work you know of his doing for the old man is some done on exchange of work between him and the old gentleman, and didn't you so understand it?

*Answer.* They exchanged work back and forth, yes, sir.

*Q.* All the work you have sworn to you understood at the time to be exchange of work?

*A.* Yes, sir.

The next witness for plaintiff was his son, Dell Cotherman, who testified as follows:

*Question.* State what you know of your grandfather plowing for your father in 1876.

*Answer.* Well, I don't know of his plowing, but I know of Jim Snyder plowing.

*Q.* Who was James Snyder working for at the time he came there?

*A.* For my grandfather.

*Q.* How long did he work there on your father's place plowing?

*A.* Well, I could not tell you just how long. He worked there quite a while I know. I know while he worked there we acted the fool lots of days; went hunting.

*Q.* About how long; a day or two ?

*A.* Yes; he was there longer than that, I think.

*Q.* Are you able to state about how long ?

*A.* No, sir; I was not very big myself.

Witness further stated that he plowed in the field east of the house, and he plowed the whole field, but was unable to tell how many acres, and that his grandfather sent him there. On his cross-examination he was asked : " How old was you when this boy Snyder was plowing there ?" to which he answered: " Well, I don't remember just how long ago it was; I went to school sometime; but while he was there I didn't go to school. I had been to school before that time." He was then asked: " Can you tell what year it was?" and he replied, " No, sir; I can't tell what year it was."

The only other testimony upon this item was that given by the plaintiff, against the objection of defendants' counsel, as follows : " I am the claimant in this case, and heard the testimony of my son in regard to some plowing that was done, as he said, by one Snyder. *Question.* How much plowing was done ? *Answer.* Eight acres we had in the lot." He further testified, against defendants' objection, that the plowing was worth two dollars an acre.

I have now given all the evidence which was offered to support the plaintiff's item of credit for plowing done in 1876 which appears in the record before us. The defendant's counsel move to strike out all testimony in support of the items of account on the debit side which were prior to September 10, 1878, for the reason that the same were barred by the statute, which the court refused, and defendant excepted. In this the court erred. There was no testimony whatever to show that the plowing, which appears as a credit, was done in 1876. No witness states that the plowing was done that year, or what year. It appears from the testimony of Mrs. Cotherman that from 1870 to 1878 her husband and herself lived on a farm in Cass county, about twelve miles distant from his father's residence, and in 1878 they removed nearer to him, and from thence resided about three-quarters

of a mile from him. It also appears that the plaintiff could not write, except his name, and his wife was in the habit of keeping his accounts upon pieces of paper, under his direction and at his request, and that the account was made up from these sources. The charges consisted mainly of items of labor performed by plaintiff and his son Dell, and for team work, the larger portion of which the witness Mrs. Cotherman knew nothing about, except as she had been informed by plaintiff. On the trial she was permitted, against defendants' objections, to testify to all of these items; her attention being called to them seriatim by counsel for plaintiff. Counsel for defendants then moved to strike out all of the testimony as to the amounts, and everything that, according to her testimony rested upon his statement, because it was nothing more nor less than hearsay from him, and his testimony could not be admitted; he could not swear to it himself, because prohibited by the statute. The court overruled the motion, saying: " You may have an exception at present. The jury will observe, as we go along, how far it is her testimony, and how far it is his."

This ruling was clearly error. It is the duty of the court and not of the jury to exclude irrelevant or hearsay testimony, and the admission of hearsay testimony in this case was a clear violation of the rule which excludes such testimony from being given in evidence. It cannot be presumed that the jury were capable of determining as they went along what part of Mrs. Cotherman's testimony was admissible and proper to be considered by them, and what portion was not. This was a grave error in the trial judge which ought not to be overlooked or sanctioned. That it had its effect upon the minds of the jury is apparent from this record. The defendants' counsel requested the court to charge the jury that "all items of accounts charged by the claimant's wife against his father, from the mere statement of the claim himself, and not proved by other testimony, must be excluded;" and at the close of his charge he read this request to the jury as a part of his charge. After the jury had retired they returned

again to the court for further instruction, when the following occurred:

*A Juror.* "Then, if you will read that once more; there are a couple of us that don't exactly understand it."

*The Court.* "All items of account charged by the plaintiff's wife against claimant's father, from the mere statement of claimant himself, and not supported by other testimony, must be excluded; *that is, it cannot be supported simply by her testimony.* You will determine from all the evidence in the case how many of those items, if any, simply rest upon her testimony alone. You will consider all the other testimony bearing upon them."

These instructions left her testimony of a hearsay nature to stand as evidence, but required that it should be supported by other evidence. Nothing was pointed out to them as not proper to be considered and weighed by them. On the contrary, the jury were left to determine as best they might what portion of her testimony was hearsay and what was not. This, it seems to me, was clearly error. The error of admitting such testimony in the first instance was of such a nature that it could not be cured by a charge to the jury, because it became impossible to sift out and clearly identify that which was proper for their consideration from that which was not.

As before stated, the last item in plaintiff's account is December 13, 1880. The uncontradicted evidence showed that afterwards the plaintiff made and delivered to Solomon Cotherman a promissory note, of which the following is a copy:

"$547.77.          FLOWERFIELD, Mich., January 18, 1882.

Six years after date, I promise to pay to the order of Solomon Cotherman the sum of five hundred and forty-seven and 77-100 dollars, without interest. Value received.

LEWIS COTHERMAN."

This note was introduced in evidence by the executors, as evidence of a settlement and adjustment of all previous accounts or indebtedness between the parties. No evidence was given or offered by the claimant to show for what, in fact, the note was given, and consequently it is to be presumed that all claims of the plaintiff against Solomon Cother-

man were settled and adjusted at the time the note was given, and that he owed Solomon Cotherman the amount thereof at that time. This presumption is only prima facie, and is liable to be explained; but until explained it is to be taken as true, and affords sufficient evidence of a settlement and adjustment of the account presented, and of the amount due to the testator at the time the note was given. *Gould v. Chase* 16 Johns. 226 ; *Duguid v. Ogilvie* 3 E. D. Smith 527 ; *De Freest v. Bloomingdale* 5 Den. 304 ; *Lake v. Tysen* 6 N. Y. 461 ; *Sperry v. Miller* 16 N.Y. 414 ; 1 Phil. Ev. (Cow. & H. Notes) 702, note 191 ; *Kelly v. Jackson* 6 Pet. 632 ; *Carver v. Jackson* 4 Pet. 1. These authorities are in point, and are founded in good sense, as well as the common experience of mankind in their mutual dealings with each other. When dealings are had between parties, and afterward one who claims that the other is indebted to him gives to such other a promissory note for a certain amount, the fair presumption is that such indebtedness has been canceled, and he has become indebted himself to such party. It is a circumstance of that importance, reversing, as it does, the relative condition of the parties from creditor to debtor, that calls upon the person who seeks to enforce a claim of indebtedness to explain why, at a subsequent time, he appears a debtor to the one he claims to be his debtor.

So it has been held that the giving of a bond and mortgage furnishes a presumption of a liquidation of all accounts between the parties : *Chewning v. Proctor* 2 McCord Ch. 14, 15 ; *Blount v. Starkey's Adm'r* 1 Tayl. 110 ; *Weidner v. Schweigart* 9 S. & R. 385. In *Kelly v. Jackson* supra, Mr. Justice Story said : "What is prima facie evidence of a fact ? It is such as in judgment of law, is sufficient to establish the fact ; and if not rebutted, remains sufficient for the purpose. The jury are bound to consider it in that light, unless they are invested with authority to disregard the rules of evidence, by which the liberty and estate of every citizen are guarded and supported. No judge would hesitate to set aside their verdict and grant a new trial, if, under such circumstances, without any rebutting evidence, they disre-

gard it. It would be error on their part, which would re-
quire the remedial interposition of the court. In a legal
sense then, such prima facie evidence, in the absence of all con-
trolling evidence or discrediting circumstances, becomes con-
clusive of the fact ; that is, it should operate upon the minds
of the jury as decisive to found their verdict as to the fact.
Such we understand to be the clear principles of law on
this subject."

The defendants in this case requested the circuit judge to
charge the jury that if they found that the parties met, and
the claimant gave the deceased a note, the law presumed
that their accounts were settled thereby. This the court
refused, but charged the jury that if they should find there
was a settlement at the time the note was given, the plaintiff
could not recover. He gave them no instructions as to the
presumptions arising under the circumstances of the case. I
think the defendants were not only entitled to the instruc-
tion requested, but that the court should have charged the
jury that the presumption from the giving of the note was
that the plaintiff's account was settled, and that instead of
his father owing him, he owed his father ; and no explana-
tion having been made as to what the note was given for,
the presumption arising from the settlement and adjustment
was conclusive, and he should have directed a verdict for the
defendants.

I am of opinion that for the errors pointed out the judg-
ment should be reversed, and a new trial ordered.

MORSE, C. J. concurred.