MURRAY LYTTLE v. THE CHICAGO & WEST MICHIGAN
RAILWAY COMPANY.

*Master and servant — Negligence — Fellow-servants — Incompetent
employé—Notice—Assumption of dangers—Evidence—Mat-
ters equally within knowledge of deceased officer of
corporation.*

1. A yard-master who has full charge of the yards of a railroad
   company, and hires and discharges the men employed therein,
   and assigns them to their labor, is the agent or vice-principal
   of the company in this respect, as well as in furnishing
   proper, suitable, and safe appliances and places for their labor;
   and notice to him of defects in the appliances so furnished is
   notice to the company, which is chargeable with his negligence,
   and responsible for his promise to remedy such defects, and to
   see that an incompetent fireman shall not handle an engine
   while switching is being done, upon which promise the switch-
   man complaining of such defects and incompetency has a right
   to rely for a reasonable time, and to a reasonable extent. *Min-
   ing Co. v. Kitts*, 42 Mich. 34; *Ryan v. Bagaley*, 50 Id. 179; *Rod-
   man v. Railroad Co.*, 55 Id. 62, 59 Id. 395; *Slater v. Chapman*,
   67 Id. 523; *Luke v. Mining Co.*, 71 Id. 364; *Van Dusen v.
   Letellier*, 78 Id. 492; *Harrison v. Railroad Co.*, 79 Id. 409;
   *Brown v. Gilchrist*, 80 Id. 56.

2. The rule that a servant in entering a service accepts the
   ordinary hazards and dangers of his occupation, and that if,
   with knowledge of defects in the machinery and appliances
   furnished by the employer, or of the unusual dangers of the
   occupation, he continues in the employment, he will be
   regarded as assuming the dangers, and cannot recover for
   injuries arising therefrom, does not apply to a case where the
   employer (a railroad company) is notified by a switchman of the
   incompetency of a fireman who has been permitted to operate
   an engine in switching cars, and who refuses to work if the
   fireman is allowed to continue so to do, and who, in reliance
   upon the promise of the company that he shall not, continues
   his work, and is injured while the fireman is running the
   engine without his knowledge, the immediate cause of such
   injury being the negligence of the fireman.

84 MICH—19.

3. The charge of. the court, which is set forth in the opinion, is held to embody the law of the case.

4. How. Stat. § 7545, which excludes the testimony of a party to a suit which is prosecuted or defended by a corporation, in relation to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within that of any surviving officer or agent, is held not to apply to the testimony of a plaintiff in a negligence case against a railroad company to an interview with the yard-master, since deceased, in the presence of the master of the round-house, who survives him.

Error to Kent. (Burch, J.) Argued December 5, 1890. Decided December 24, 1890.

. Negligence case. Defendant brings error. Affirmed. The facts are stated. in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.
*Smedley & Irwin,* for plaintiff.

MORSE, J. On June 19, 1886, the plaintiff was in the employ of the defendant as a switchman in its yards at Muskegon. He had been in such employment since February of the same year, and had an experience of about three years before that time as a switchman for the company. While on the foot-board at the rear end of a tank to a locomotive, the engine running backwards, he was injured in attempting to uncouple cars. He brought suit against the defendant in the Kent circuit court, and recovered a verdict of $4,000. .

At the close of the plaintiff's case, the defendant moved that the court direct a verdict in its favor, on the ground of the contributory negligence of the plaintiff, and also for the reason that the evidence did not tend to show any negligence in the defendant, as alleged in plaintiff's declaration. The declaration was in four counts, and

charged negligence on the part of the defendant in the following particulars:

1. In not providing a hand-rail across the rear end of the tender of said locomotive, after complaints made, and a promise by defendant that it would be provided.

2. In not providing the tender of said locomotive with a proper foot-board at the rear end thereof, in a reasonable state of repair, after notice to defendant of its defective condition, and a promise that the same would be repaired.

3. In allowing an unskillful and incompetent person to run and operate the said engine, after complaints made to defendant, and a promise on the part of defendant to plaintiff that, if he would continue in its employ, said unskillful and incompetent person should not run the engine any more.

4. And the fourth count of said declaration is a combination of all the above-alleged acts of negligence.

The motion was overruled, and the defendant thereupon submitted testimony in its defense.

On the trial, the plaintiff introduced evidence tending to show that the switch-engine with which he was working was defective in that it had no hand-rail on the rear part of the tender, where it is customary to have such a hand-rail for the men to take hold of in getting off and on, "in case they were to fall, or anything;" that the foot-board was out of shape. This is the step at the rear of the tank. It was supported by two heavy irons, bent at the bottom to place the step on. These irons were bent back so they touched the brake beam, and the corner of the step was broken off, leaving it in bad shape.

" The end of it was bent down towards the track, and then it sloped instead of standing level; it was bent down, and then sloped down towards the track. A hand-rail is an iron rail, and is fastened to the deck of the tank. The deck of the tank is the platform the tank sets on, and it projects out; and a hand-rail is arch-shaped,

and goes right down through these timbers, and fastened."

On the night of June 10, having previously complained to his foreman, Martin Shannon, he reported these defects to the yard-master, McKiever (now dead), and was about to quit work, as he informed McKiever, on that account. McKiever told Pease, who plaintiff supposed was the assistant master mechanic, that it was dangerous, and he wanted it fixed, and Pease promised to fix it the next Saturday night. Relying on this promise, plaintiff kept at work expecting the defect to be remedied. He swears he would not have continued in the employ of the company if it had not promised to fix it. He also complained to Shannon about the fireman, one Marine Hector, running the engine, that he was not fit to handle an engine, and he would not work behind the engine if he was going to run it. He also reported to McKiever, who told the engineer to keep his place, that the fireman was not to handle the engine. The plaintiff and another switchman, George Race, quit work, and were about leaving the yard when McKiever asked them what was the matter, and plaintiff told him he was not going to work any more if the fireman was going to handle the engine. McKiever said if they would go back to work he would see that the fireman did not run the engine any more. At the time the plaintiff was hurt, this fireman was running the engine, the engineer having stepped off for a few moments. The testimony on the part of the plaintiff tended to show that Hector was an incompetent man to handle the engine, and did not understand the signals.

"He imagined he saw a signal when he didn't. Sometimes he would shut it off and stop without a signal, and sometimes go ahead without a signal, and that was the reason we complained that he was not fit to handle the engine."

Plaintiff testifies that he continued work in this instance for the reason that they agreed not to let the fireman handle the engine.

There was a box about six inches wide by two inches thick running the width of the tank. It was his custom, when getting on the foot-board, to take hold of the front end of this box, which gave him some security, but, at the time of the injury, a portion of the top of the box was split off, so that he could not hold on to it. It was broken off that morning. The box was not put there to take hold of, but to carry tools in, links and pins. At the time of the injury, about 10 o'clock in the forenoon of June 19, 1886, the engine was backing at the rate of five or six miles an hour, pushing three freight-cars. Plaintiff stepped on the foot-board on the right-hand side of the engine, which was going in a southerly direction, and was reaching for the coupling pin to pull it in order that the cars might be "kicked in" on a side track by the momentum given them by the engine. As plaintiff was about to pull the pin, the fireman suddenly shut off steam and reversed the engine, without any signal from the plaintiff, and without giving him any notice of his intention to do so. The sudden stopping of the engine took up the slack between the tank and the car to which it was attached, plaintiff was thrown violently forward, and, having nothing to catch hold of or hang on to, lost his balance, and fell upon the track. One of the wheels ran over his right foot, making amputation necessary at the ankle joint.

It is also evident from all the testimony that the injury to plaintiff was occasioned by the defect in the step, or foot-board, and the absence of a hand-rail, or something to take hold of, together with the action of the fireman in shutting off the steam. This act of the fireman was the immediate cause of plaintiff's fall,

although, if it had not been for the defects spoken of, he might perhaps have saved himself. The fireman, a witness for the defendant, testifies:

"When I shut off the steam, it took up the slack between the tender and the car. Lyttle did not lose his balance until the steam was shut off."

There can be no fault imputed to the plaintiff, except in that he used the step and undertook to do the uncoupling knowing of the defects that existed, and the want of a hand-rail; but he testified that he had used it about 100 times a day for a week ending that day without being jerked off or falling off.

"There would have been no danger to me in the use of the tender if it had not been for that sudden jerk. * * * I was jerked so I was falling, and had to get out, or go under."

It appears from the evidence that McKiever had full charge of the yards, and hired and discharged the men therein. He had full notice by plaintiff's showing of the defect in the step, and the want of a hand-rail, and of the incompetency of the fireman to handle the engine while switching was being done with it. The court correctly charged the jury that notice to McKiever was notice to the defendant, and that his negligence was the negligence of the company.

It is contended that the yard-master was a fellow-servant of the plaintiff; but he was in no proper sense such a co-employé that his negligence would not bind the company. In these yards he represented the company. He it was who hired and discharged the men, and directed and assigned them to their labors; and he was the agent or vice-principal of the defendant in this respect, as well as in the furnishing of proper, suitable, and safe appliances and places for their labor. His promise to remedy the defects in the engine, and to see that the fireman

did not run the engine, was the promise of the company, and plaintiff had a right to rely upon it for a reasonable time, and to a reasonable extent.     See *Van Dusen v. Letellier,* 78 Mich. 492; *Brown v. Gilchrist,* 80 Id. 56; *Slater v. Chapman,* 67 Id. 523; *Quincy Mining Co. v. Kitts,* 42 Id. 34; *Ryan v. Bagaley,* 50 Id. 179, 180; *Rodman v. Railway Co.,* 55 Id. 62, 59 Id. 395; *Luke v. Mining Co.,* 71 Id. 364; *Harrison v. Railroad Co.,* 79 Id. 409.

The defendant invokes, against the validity of this verdict, and any recovery by the plaintiff, the familiar rule that a servant in entering a service accepts the ordinary hazards and dangers of his occupation, such as are incident to it, and for an injury sustained through such danger cannot recover; and also another rule that, although there are defects in the machinery, appliances, or structures furnished by an employer, or the dangers of the occupation are unusual, still if the employé knows of the defects, or of the dangers to be encountered, and continues in the employment, he will be regarded as assuming the dangers, and will not be permitted to recover for injuries arising therefrom.     But neither of these rules applies to the plaintiff's case.    There was testimony tending to show that the fireman was incompetent to run the engine while switching; that the employer was notified of such incompetency; that plaintiff refused to work if the fireman was permitted to handle the engine; that such employer promised that the fireman should not run the engine, and, upon such promise, plaintiff continued his work; that the immediate cause of his injury was the negligence of this fireman while plaintiff did not know he was running the engine.    It is true, this testimony was disputed and in part rebutted by the defendant, but this issue was for the jury; and, if they found with the plaintiff, he was entitled to recover on these facts alone.

In .reference to the want of a hand-rail and the defect
in the foot-board, the court instructed the jury that the
defendant was not bound to furnish the locomotive
tender with an iron rail at its rear; it could lawfully use
said tender with an open box, such as it .was originally
provided with, and it was not responsible to the plaintiff
for any injury occurring in consequence of continuing the
use of said locomotive tender after a part of the outer
board of said box, and which the plaintiff had before
used as a handle, had, with his knowledge, been broken
off, if they found that the box was a thing which fur-
nished him with reasonable safety of itself, whatever
the condition of the other surroundings was, and that, by
reason of its being broken off, he no longer had any
safety, and that he had not brought it to the attention
of the company, but had continued to use it thereafter.
He also instructed them that the defendant was under no
legal obligation to furnish a hand-rail, and that the
plaintiff could not recover under the first count of the
declaration.    The court further instructed the jury as fol-
lows:

" The defendant company were bound to furnish for
these employés, and for the transaction of its business,
reasonably safe and proper'rolling stock and locomotives,
and reasonably safe appliances thereto, and a competent
engineer and fireman.    All the circumstances and the
nature of the employment being considered, they were
bound to do this, and what is reasonable in that respect
is left to the jury as a matter of fact to find.    But there
is no obligation on the part of the company to furnish
the best that can be procured of either machinery or
men; and, in entering upon the employ of a company, an
employé is presumed to know at least as much upon that
subject as may be observed by a person having a reason-
able degree of experience in the employment upon which
he enters.    If, therefore, you find that the defendant
company did provide upon its locomotives reasonably
good, upon this locomotive reasonably good, appli-

ances for the purpose for which it was used,—I may say appliances for the purposes for which they were used,—and kept them in a good state of repair, and a reasonably good engine-driver for the purpose in the person of the fireman, who was at the time running this locomotive, then the plaintiff cannot recover. If you find that the company did not furnish suitable locomotives, or attachments thereto, or appliances therefor, for the purposes shown in this case that it was used for, or a competent engineer and fireman, and the plaintiff knew it, or had reasonable opportunity to know it, and did not impart such information to the company, then plaintiff cannot recover.

"If you find from the evidence that the plaintiff was reckless or careless in his employment, and that such recklessness or carelessness or negligence on his part contributed in any wise to the injury, then, under the law as it exists in this State, he cannot recover; that is, if he has been guilty of what we call 'contributory negligence,' he cannot recover."

"If you find that plaintiff, while in defendant's employ, learned that the switch-engine upon which he was working was defective and dangerous, and stated to the yard-master that unless the defects and dangers were removed he would quit work, and the yard-master promised to remedy the defects and remove the dangers, and requested the plaintiff to continue work on a defective and dangerous engine, and that the plaintiff, relying on such promises, continued in the employ of the defendant for a reasonable length of time thereafter, and while in the exercise of due care, and without fault on his part,—I add these words 'without fault on his part,'—was injured by reason of such danger not being removed, and such defects not being repaired, plaintiff is entitled to recover. As to what would be a reasonable time to continue in the use of an alleged defective switch-engine after promise to repair was made, if you find that it was made, which he claims, would depend on the circumstances of the case; as, for instance, the frequency with which the engine was used, the danger of using it while out of repair, if you find it was out of repair, and the opportunity which the defendant had for repairing it, etc.; you are to say, after considering all these circumstances of the case, whether plaintiff acted reasonably and ordinarily prudent in continuing in the use of this alleged defective and danger-

ous switch-engine during the time which he did use it.

"If you find that the plaintiff, while in the defendant's employ, learned that the fireman was running the engine in a careless, reckless, and incompetent manner, and stated to the yard-master that he was going to quit work if the fireman was going to be allowed to run the engine, and the yard-master told the plaintiff to continue work, and he would see that the fireman did not run the engine any more, and that the plaintiff, relying on this promise, continued in the employ of the defendant, and, while in the exercise of due care, was injured by reason of the fireman's running the engine in the manner aforesaid, plaintiff is entitled to recover."

These instructions correctly embodied the law of the case. Cooley, Torts, 559; *Hough v. Railway Co.*, 100 U. S. 225; *Brabbits v. Railway Co.*, 38 Wis. 289; *Conroy v. Iron Works*, 62 Mo. 35; *Furnace Co. v. Abend*, 107 Ill. 45; *Greene v. Railway Co.*, 31 Minn. 248 (17 N. W. Rep. 378); *Hoffman v. Dickinson*, 31 W. Va. 142 (16 S. E. Rep. 53); *Laning v. Railroad Co.*, 49 N. Y. 521; Shear. & R. Neg. § 96.

It is also argued that the court erred in permitting the plaintiff to testify to matters equally within the knowledge of McKiever, the yard-master and officer or agent of the corporation defendant, who was deceased at the time of the trial. The court on motion struck out all the testimony of plaintiff in reference to what occurred between him and McKiever, except that part of his evidence which related to an alleged interview between McKiever and Pease, the master of the round-house, in the presence of the plaintiff and Race, and instructed the jury not to regard it. The court committed no error in this respect. The statute (How. Stat. § 7545) under which this evidence was sought to be excluded reads as follows:

"And when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be permitted to testify at all in relation to matters which,

if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, *and not within the knowledge of any surviving officer or agent of the corporation,"* etc.

Under this statute, the interview between McKiever and Pease, and what was said there, was admissible. The record shows that George Race testified to the same facts as to the complaints to and promises of McKiever as did the plaintiff, he being present with him, and the case of the plaintiff in this respect did not depend alone upon his own testimony.

The judgment of the lower court is affirmed, with costs.

The other Justices concurred