BULLOCK *v.* TOMPKINS' ESTATE.[1]

1. TRIAL—ORDER OF PROOF.

An objection to evidence of the transactions of an alleged agent on the ground that the agency is not shown becomes immaterial, as one going merely to the order of proof, where the agency is in fact established later in the trial.

2. NOVATION—PRINCIPAL AND AGENT—AUTHORITY—QUESTION FOR JURY.

An agent of deceased, who was in the habit of loaning money for her on real estate on his own judgment as to the sufficiency of the security, and of keeping the bonds and mortgages in his possession, and of taking deeds to mortgaged land in his own name, paying prior liens thereon, and after sale accounting to her for the proceeds, accepted a conveyance of certain lands to secure loans made for deceased, and verbally agreed to assume the payment of a debt which the grantor owed plaintiff, and which constituted a lien on part of the lands so taken. *Held*, in an action against decedent's estate to enforce payment of the debt, that the question whether the agent was clothed with such powers as would enable him to make a contract of novation that would bind his principal was properly submitted to the jury.

3. EVIDENCE—OWNERSHIP OF PROPERTY.

Evidence that money loaned for deceased by her agent was appraised as her property, and was spoken of as her property in the affidavits of her daughter and of her son-in-law and of her agent, was sufficient to justify a finding that it was her property, and not that of her husband's estate.

4. SAME—CONTRACT WITH DECEASED PERSON—WITNESSES—COMPETENCY.

Under 3 Comp. Laws 1897, § 10212, providing that, when a suit is prosecuted or defended by the heirs or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify to matters which, if true, must have been equally within the knowledge of such deceased person, a witness is not disqualified from testifying as to a contract made by a decedent on behalf of a third person in an action to enforce such contract against the third person's estate.

[1] Rehearing denied January 15, 1901.

Error to Livingston; Smith, J. Submitted October 2, 1900. Decided October 31, 1900.

Cordelia E. Bullock presented a claim against the estate of Charlotte Tompkins, deceased, based upon a contract of novation. The claim was allowed by the commissioners, and an appeal taken to the circuit court. From a judgment for claimant, defendant brings error. Affirmed.

*Fred H. Warren* and *William P. Van Winkle*, for appellant.

*A. J. Sawyer & Son (M. Wallace Bullock, Shields & Shields*, and *Louis E. Howlett*, of counsel), for appellee.

Moore, J. The plaintiff presented a claim in the probate court against defendant. The case was appealed to the circuit court, where she obtained a judgment upon a verdict rendered by a jury. The case is brought here by appeal. The record contains upwards of 300 pages, while the briefs are very exhaustive. The questions involved, however, are almost wholly questions of fact, and we shall not attempt a detailed discussion of the 141 assignments of error.

Mrs. Tompkins, in her lifetime, was a widow residing in the State of New York. Her husband, in his lifetime, was in the habit of loaning money in Michigan. Mr. Waddell acted as his agent in making these loans until Mr. Waddell's death, when Mr. Montague became his agent. After Mr. Tompkins' death, Mrs. Tompkins loaned money in Michigan, Mr. Montague acting as her agent.

Prior to 1891, Mr. Bullock and Mr. Phinney were engaged in real-estate transactions in Gratiot county, and had built up a town known as the "Village of Perrinton." They were also the owners of land at the village of Ashley. Mr. Bullock sold his interest in the business to Mr. Phinney, and the latter agreed to hold Mr. Bullock harm-

less from the debts. The firm was indebted to the plaintiff in this proceeding in the sum of $3,825. For the purpose of securing her, Mr. Phinney deeded to her certain real estate, and took back a land contract covering the same and other lands, and agreed to pay her said debt on or before 10 years, with 7 per cent. interest, and to pay the taxes on the real estate.

Bullock and Phinney had borrowed money of Mr. Montague belonging to Mrs. Tompkins, and had given to her a mortgage of $6,000 on real estate at Perrinton, and had also borrowed other large sums of money, for which they had given their notes, and turned over to Mr. Montague mortgages and land contracts; so that in December, 1891, these debts amounted to nearly $24,000. Mr. Phinney was becoming embarrassed, and had said to Mr. Montague that, if it became necessary to do so, he would deed to him the real estate to secure the debts he owed to Mrs. Tompkins. In November he sent him a deed containing a general description of a large quantity of real estate. This deed was not put upon record. Later, in response to a letter from Mr. Phinney asking him to come, Mr. Montague went to Perrinton and Ashley, when Mr. Phinney and his wife deeded to him a large quantity of real estate, the deeds reciting, "Said lands are sold subject to all contracts given by A. H. Phinney, and to all incumbrances." Stocks and personal property were also assigned to Mr. Montague at this time. It is the claim of plaintiff that Mr. Montague agreed, as part of the consideration for these conveyances, to pay Mrs. Bullock the amount to become due upon her land contract, and that he was acting for Mrs. Tompkins, and that Mrs. Tompkins, from that time on, stood in the place of Mr. Phinney, so far as this contract was concerned, and that Mrs. Bullock assented to this agreement, and never after looked to Mr. Phinney for the payment of her debt. The position of defendant is that no such agreement was made; that Mr. Montague had no authority to make such agreement; that, if made, it would not bind the estate of decedent; that,

if it was made, it was void under the statute of frauds, and was void for want of consideration, and the only remedy plaintiff has is a suit in equity to foreclose her land contract.

Counsel for defendant complain very earnestly because the circuit judge allowed the acts and conduct of Mr. Montague in relation to other transactions to be given in evidence before showing that he was the agent of decedent, and say in doing this he prejudiced the jury against defendant, and the case ought for that reason to be reversed; citing *Bond* v. *Railroad Co.*, 62 Mich. 646 (29 N. W. 482, 4 Am. St. Rep. 885). Later in the case, by consent of counsel, a disclosure made by Mr. Montague in a garnishee case, and an appraisement made in the estate of Mrs. Tompkins in the surrogate's court, were offered in evidence, in which it appeared that in the various transactions about which testimony was given Mr. Montague was acting for Mrs. Tompkins; so that the objection simply becomes one as to the order of the proof, and is not within the case cited by counsel.

It is insisted upon the part of the defendant that, taking the most favorable view of the testimony given, it does not show a novation, and that the court should have directed a verdict for defendant. We cannot agree with counsel in this respect. Attached to the proceedings in the surrogate court was the affidavit of Mr. Newcomb, the son-in-law, in which he swore:

"I knew Charlotte Tompkins in her lifetime. She was my wife's mother, and lived with me for 10 years last past. I knew of her having money invested in bonds and mortgages in Livingston county, Michigan. Howell is the county seat. Her agent there to invest such moneys was Luke S. Montague. He had charge of her business for about 10 or 12 years, and had possession of her bonds and mortgages. He had furnished statements from time to time showing condition of the property on the 1st of January in each year."

Mrs. Newcomb, who was the daughter of Mrs. Tompkins, testified in the same proceeding that Mr. Montague

took charge of the securities, and continued loaning, collecting, and reinvesting according to his own judgment, and that the securities remained in his hands and under his control in Michigan, and that none of them had ever been in the State of New York. In the same proceeding Mr. Montague testified:

" Since about January 1, 1882, I have had charge of all of the property of Charlotte Tompkins, late of Rochester, N. Y., in the State of Michigan, as her agent. Have made loans, taken securities almost entirely in mortgages, and have foreclosed mortgages whenever it became necessary, and all in her name. I have now charge of all securities for moneys loaned for her in the State of Michigan and belonging to her at the time of her death, and they are now actually in my possession, and have been in my possession since they were taken, as shown by their dates, except those that were loaned by my late partner, Mr. Waddell; and they came to my hands a short time after Mr. Waddell's death, which occurred December 10, 1881. The securities taken by him and those taken by me have always been actually within the State of Michigan, and in his possession or mine, at all times. The investments made by him were made by him on his own judgment, and those made by me upon my own judgment."

In the disclosure in the garnishee proceeding he testified that, in receiving the deeds from Mr. Phinney, he was acting for Mrs. Tompkins and Mr. Newcomb. It is true that he gives a different version of what the agreement was from the one given by the witnesses for the plaintiff, but that does not go to the question for whom he was acting when he made it. There was testimony tending to show that, while acting for Mrs. Tompkins, Mr. Montague had taken deeds of the property covered by mortgages in his own name in payment of the mortgages, and afterwards sold the property at such prices as he saw fit, and accounted for the money; that he assumed and paid prior liens upon the property so taken, and charged the amount so paid up to the loan; that he loaned money on second mortgages, thereby rendering it necessary to assume and pay the first mortgage to make the second security good;

that he loaned money and took deeds in his own name as security, and held the title until the loan was paid, and then deeded back the property; that he purchased supplies for the farms so taken, made repairs upon the buildings, and built sidewalks, paid insurance and taxes, paid costs upon foreclosures, paid for recording the papers when the deed was in his own name; that he did all these things without consulting Mrs. Tompkins, and only notified her of the fact after it had been done.

The witnesses for the plaintiff gave testimony in support of the claim that there was a novation. Under these circumstances and this proof, we do not think the court would have been justified in taking the case from the jury. *Mulcrone* v. *Lumber Co.*, 55 Mich. 622 (22 N. W. 67); *Finan* v. *Babcock*, 58 Mich. 301 (25 N. W. 294); *Gleason* v. *Fitzgerald*, 105 Mich. 516 (63 N. W. 512).

It is claimed that, even if a complete novatory contract was made, it would not bind the estate of Mrs. Tompkins, because Mrs. Tompkins was acting as the executrix of her husband, and as executrix she could not make a contract of novation, and could not authorize her agent to do the things she could not herself do. Plaintiff replies to this proposition that the point was not made in the court below, and it is too late to make it here. She also says the record shows the fund belonged to Mrs. Tompkins, and not to her as executrix. There is an abundance of testimony in the record tending to show that the fund belonged to Mrs. Tompkins personally, and not to her as executrix. It was appraised as her property, and is spoken of as her property in the affidavits of her daughter, her son-in-law, and Mr. Montague.

When this case was tried Mr. Montague was dead. Witnesses were allowed to testify to the arrangement made by him upon which plaintiff bases her claim. This is said to be error; citing section 10212, 3 Comp. Laws 1897. This section provides as follows:

"That when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or per-

sonal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all to' matters which, if true, must have been equally within the knowledge of such deceased person."

This is not a claim against the estate of Mr. Montague, and the letter of the statute does not apply.

It is said, though the strict letter of the statute does not apply, the spirit of the statute would exclude the testimony.   This statute has been construed many times, and against this contention of defendant.   *Wheeler* v. *Arnold*, 30 Mich. 307; *Jones* v. *Beeson*, 36 Mich. 214; *Ward* v. *Ward*, 37 Mich. 253; *Cotherman* v. *Cotherman's Estate*, 58 Mich. 467 (25 N. W. 467); *Doolittle* v. *Gavagan*, 74 Mich. 11 (41 N. W. 846); *Wilson* v. *Wilson's Estate*, 80 Mich. 472 (45 N. W. 184); *Lyttle* v. *Railway Co.*, 84 Mich. 289 (47 N. W. 571); *Smith* v. *Smith's Estate*, 91 Mich. 7 (51 N. W. 694).

We have disposed of the controlling questions in the case, and do not deem it necessary to discuss the other assignments of error.

The judgment is affirmed.

The other Justices concurred.