# Daniel L. Wells and another v. William Martin and another.

*Contract: Agency: Authority: Supplies.*    A contract whereby railroad contractors sub-let a portion of the work, to be completed to the satisfaction of the engineers, at a time specified, reserving the right to end the contract and retain the sums withheld from the monthly estimates, and to pay the laborers directly, payment to be made when the work is completed, provided the railroad company had then paid them, and which provided that until the work was finished no money should be paid the sub-contractor except for labor actually performed and materials furnished on said work, and that all moneys received upon estimates as the work progressed should be used to pay for such labor and materials, and that the sub-contractor should stand, in respect to such work, as disbursing agent for his contractors, and be liable, as for a breach of trust, for any misapplication of such moneys, is held not to authorize such sub-contractor to pledge the credit of his contractors for supplies furnished to him by third persons.

*Agency: Authority: Ratification: Evidence.*    And proof that the paymaster of such contractors paid so much of a bill presented to him against the sub-contractor, as the latter said it would be, and refused to pay any

more, referring to it as a bill furnished to the latter, and that he stated that such contractors would pay for stuff furnished the sub-contractor to go on the road, on his order, on presentation of the voucher and order, does not make out a case of ratification of the agency of the sub-contractor in purchasing supplies on credit.

*Agency: Authority: Ratification: Statements of agent.* The statement of an agent of such contractors to a third person, that they intended to pay the bill for which the suit is brought, is no evidence of a ratification by his principals of authority in the person who incurred the debt.

*Heard October 8.     Decided October 19.*

Error to Ottawa Circuit.

*Severens, Boudeman & Turner,* for plaintiffs in error.

*R. W. Boynton,* for defendants in error.

CAMPBELL, J :

Martin & Barnett sued plaintiffs in error for certain provisions and similar supplies furnished, and in form charged to one James McGarry, but alleged to have been furnished to him as agent and on account of plaintiffs in error.

Wells & French, the plaintiffs in error, had taken a contract for building a part (or all, it does not appear which) of the Chicago & Michigan Lake Shore Railroad. Portions of this they let out to sub-contractors. On the 13th of September, 1870, they contracted with McGarry to construct a part of the line from the Grand river to Nunica, and from Grand river to station ninety. The contract provided that all work should be subject to the approval of the engineers, and be completed by November 13, 1870. The right was reserved to end the contract and retain the sums withheld from the monthly estimates, and to pay the laborers directly in case it was deemed necessary to secure their pay. Various other reservations were contained in the agreement which are not important. Payment was to be made when the work was completed, in fifteen days after the engineers' certificate and estimate, provided the railroad

company had then paid the plaintiffs in error.    Until that time the following provision was operative :

"And it is mutually agreed and understood, that until the final completion of the work embraced in this contract, no moneys shall be paid to said second party, except for labor actually performed and materials furnished on the work embraced therein, and that all moneys received upon estimates during the progress of the work shall be used to pay said labor performed and materials furnished, and that the said party of the second part shall stand, so far as the work embraced in this contract extends, in the relation of disbursing agent for the party of the first part, and in case of any misapplication of such moneys shall be liable to the criminal and civil proceedings for a breach of such trust."

The principal questions arose concerning the agency of McGarry and his right to obtain the articles on the credit of Wells & French, as well by original authority as by ratification.    A small part of the account related to a similar transaction with a sub-contractor named Hood.

There is no evidence tending to show any ratification by Wells or French in person.    The case refers to the acts of Aiken, a general agent, and McLeod, a paymaster.

There is no evidence in the case showing what powers these agents had.    So far as McLeod is concerned, the evidence of plaintiffs shows that he called on them to pay one of McGarry's bills, and paid so much of it as McGarry had told him it would be, and refused to pay any more. He referred to it as a bill furnished McGarry, and not as furnished Wells & French.    He is further sworn to have said that such stuff as they might "furnish McGarry to go on the road, on McGarry's order, that if we would send the voucher and McGarry's order, Wells & French would pay the bill."

There is no evidence of any act or statement by Aiken tending to show a recognition or ratification of McGarry's agency, unless it is found in a statement to a third party,

that they intended to pay Martin's bill.   This proves nothing, and if Aiken's authority had been shown, it would have been nugatory.

There is no proof of McLeod's authority to ratify, and we do not think the evidence tended to show any such attempt.    At the most, it indicates that money would be advanced on McGarry's account, to pay McGarry's own liabilities, in case he desired it.

The contract itself gave no right to McGarry to pledge the credit of Wells & French.    It allowed them, in certain cases, to pay McGarry's debts for labor, and it exempted them from any obligation, before the work was completed, to advance money beyond what should be necessary to pay for labor and materials, and bound McGarry to apply advances to that object.    But it plainly contemplates that he, and not they, was to furnish everything, and only reserved the rights in question to prevent his defrauding his creditors.

Upon a careful review of the testimony we see no evidence tending to show any other real or supposed authority. McGarry is shown by the testimony of defendants in error, and his own, to have dealt with them solely on the faith of such authority as he might have under the written contract. They relied on nothing else.   And the only verbal authority he alleges to have received from French is qualified by an express reference to the rights reserved in the contract.

It is needless, therefore, to consider the other questions, as the plaintiffs below by their own testimony showed they had no right of action on McGarry's dealings.    Upon the Hood advances the testimony was all improper, so long as the written contract with him was not produced.

The defendants below were entitled to the instruction which they asked, that the jury should be directed to find for them.    There is nothing to sustain the verdict.

The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.