WILLIAM G. BOND v. THE PONTIAC, OXFORD & PORT AUSTIN RAILROAD COMPANY.

*Agency—When in issue, error to permit witnesses to persist in referring to defendant as principal—Chief engineer of railroad company—No presumption of his authority to contract for erecting depot buildings —Duty of company's directors to locate same, unless power clearly delegated elsewhere—Such double power cannot be conferred on engineer without concurrent action of directors—Statements of agent concerning his authority—No one has a right to rely on same—Procuring right of way by company—No tendency to show that it is building its own road—Or that person so employed acts as its agent—Duty to ascertain with whom one is dealing—Fault his own if he acts without written contract or adequate inquiry—Proof that contract for building its road was let to an investment company—Rebuts all inferences of authority from railroad company to any one else to do any of the work—Estoppel—Does not arise from appropriation of what one has a right to suppose was properly done—Corporation or individual not bound by action or silence of officer or agent outside of his power—Or when not acting officially—This is true as to individual directors.*

| | |
|---|---|
| 62 | 643 |
| 73 | 92 |
| 62 | 643 |
| 83 | 255 |
| 62 | 643 |
| 86 | 411 |
| 62 | 613 |
| 92 | 54 |
| 62 | 643 |
| 109 | 298 |
| 62 | 643 |
| 125 | 20 |
| 62 | 643 |
| 128 | 236 |
| 128 | 568 |
| 62 | 643 |
| 142 | ³429 |
| 142 | ¹438 |
| 62 | 643 |
| 155 | ⁵38 |

1. In a suit against a railroad company on a *verbal* contract made with its chief engineer for erecting depot buildings, whose *authority* was denied by defendant, the plaintiff and his witnesses were allowed to refer *repeatedly* to the defendant " as the party dealing or dealt with," against objection.

   *Held*, that the objection should have been regarded, and that the court, by allowing witnesses to *persist* in such references, placed the jury in a position where they were not only liable to be misled, but to overlook the *necessity* of *proof* of the engineer's *authority* to make the contract.

2. No presumption can arise of any *power* in the chief engineer of a railroad company, which is constructing its road, to make a contract for building depots, the definite location of which is one of the most important duties of the company, and belongs to its board of directors unless clearly delegated elsewhere.

3. A chief engineer of a railroad company cannot be made the possessor by delegation of the *double* power of *locating* and *contracting* for the erection of depot buildings (if he can be at all), without the *authority* of the board, on which the law imposes the *duty* of conducting the corporate business, which cannot be derived from anything but their concurrent doings; and no one has a *right* to rely on the statements of an *agent* concerning his *own* authority.

4. The fact that a railroad company is engaged in procuring rights of way has no tendency to show that it is building its own road, or that any particular person employed in that work is doing so as a servant of the company. The general railroad statutes contemplate, what is matter of almost universal experience, that *such* work is usually done by contractors, and special remedies are provided on that assumption. How. Stat. §§ 3423–3425.

5. It is the duty of every one to inform himself with what parties he is dealing, and if he chooses to act without a *written* contract, or without *adequate* inquiry, the fault cannot be thrown upon a principal who never authorized such a contract to be made.

6. When, in a suit against a railroad company to recover on a contract made with its chief engineer to construct depot buildings, it appeared that the contract for building the road was let to an investment company, all *inferences* of authority from defendant to any one but the contractor to do any part of the work ceased.

7. The appropriation of what one has a *right* to suppose was *properly* done creates no estoppel.

8. A principal, whether private or corporate, is not bound by the *action* or *silence* of an agent or officer outside of his powers, or where he is not acting officially; and this is true as to officers and directors *individually*.

Error to Lapeer. (Stickney, J.) Argued July 8, 1886. Decided October 7, 1886.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*Aug. C. Baldwin,* for appellant :

Howard, as chief engineer, had no such authority as is claimed for him, and, to make his acts binding, other direct evidence must be produced : *Powrie v. Kansas Pacific R. R. Co.,* 1 Col. 529 ; *Gardner v. Boston & Maine R. R. Co.,* 70 Me. 181 ; *Thayer v. Vt. Cent. R. R. Co.,* 24 Vt. 446 ; *Vandewerker v. Vt. Cent. R. R. Co.,* 27 Id. 125 ; *Herrick v. Belknap's Estate,* Id. 673.

The refusal, after reasonable notice, to produce a document in possession, which the adverse party is entitled to introduce in evidence, authorizes secondary proof : *Moulton v. Mason,* 21 Mich. 369.

In all such cases there must be good faith on both sides : *Holt v. Miers,* 9 Carr. & Payne, 191 ; *Bate v. Kinsey,* 1 Crom. Meeson & Ros. 38.

In *Holt v. Miers*, 9 Carr. & Payne, 191, a notice served at nine o'clock in the evening preceding the trial was held too late.

*J. B. Moore* (*H. Geer*, of counsel), for plaintiff:

Even in criminal cases, where there is any evidence tending to sustain the charge, this Court will not on review weigh it, or say whether the jury ought or ought not to have considered it sufficient to sustain the charge : *People v. Henssler*, 48 Mich. 51 ; *People v. Howard*, 50 Id. 240 ; *People v. Moore*, 52 Id. 563.

In civil suits the court cannot require the jury to disregard any preponderance of evidence which convinces them : *Watkins v. Wallace*, 19 Mich. 77 ; *Elliott v. Van Buren*, 33 Id. 52 ; *Peoples v. Evening News*, 51 Id. 17.

CAMPBELL, C. J.   Plaintiff sued and recovered against defendant on an alleged verbal contract made with F. B. Howard as chief engineer, whereby plaintiff was to have the building of fourteen depot buildings, for which he made preparation, but which, as he claims, he was not allowed to complete. Defendant denies any such contract relations. It was claimed by defendant, and shown by testimony in no way impugned (although the jury without any evidence found otherwise), that the whole building and equipment of the railroad had been put under contract with the New York, New England & Western Investment Company, and that defendant had nothing to do with it, and none of defendant's officers or agents had any authority in the matter.

In order to make out his case, plaintiff by his own testimony swore to the making of the arrangement with Mr. Howard. To establish Mr. Howard's authority, he introduced testimony of various things done on the road from which he claimed authority might be inferred against defendant.

The contract in question for building the road bound the defendant to furnish right of way and depot grounds, and the investment company was to do all the rest except a track near Caseville, to be built by Francis Crawford, near his mill. He was also to furnish an amount of ties which the investment company was to pay for.

It is not disputed, and the court below so charged the jury, that no testimony appeared of any corporate action authorizing Mr. Howard to act for the defendant in the matter in controversy, or ratifying his action. The contract with the investment company bound defendant to appoint, as chief engineer, secretary, and treasurer, persons satisfactory to the investment company. The case does not show any grant of power from defendant to any such officers, or that any of them represented defendant in the work which was in progress by any such authority. No payment was made to plaintiff, and no recognition was had by defendant of the contract in question, and no facilities were given him for carrying it out. The action is for not permitting its completion, and not for performance.

The case was placed entirely on circumstantial evidence, and the questions relate chiefly to its force and validity.

It was early objected that plaintiff and his witnesses were allowed to refer repeatedly to defendant as the party dealing or dealt with, when the question of authority was mooted, and it was essential to know with what particular person the dealing was had. We think the objection should have been regarded, and that the court, by allowing witnesses to persist in such references, placed the jury in a position where they were not only liable to be misled, but were also likely to overlook the necessity of proof of authority.

In order to understand the bearing of the facts admitted against defendant, it is necessary to consider the position of various persons whose actions were deemed important on the trial.

Mr. Howard was nominated to the investment company, and approved by them, as engineer of the defendant in 1881, and so continued until some time in 1883. He was entirely paid by, and received orders from, the investment company as its own engineer. No record was shown of any instructions or powers from defendant. George Nettleton succeeded him.

F. H. Carroll was paymaster of the investment company until July, 1883, and secretary of the defendant after July, 1883.

Alfred R. Fiske was examiner and engineer of the investment company, through whom orders were generally given, until January, 1883. He was never an agent or officer of defendant.

George W. De Bevoise was secretary and treasurer of the investment company, and had general charge over the road for that company, relieving Mr. Fiske in January, 1883. He represented no one else.

Charles A. Carpenter was president of defendant, and Junius Ten Eyck, Abram Le Roy, J. T. Stanton, and others, directors.

The record is voluminous, and, from the manner in which some part of the case was brought, is somewhat confused. Defendant claimed that the jury should have been directed that no cause of action was made out, and this required a full report. Other questions were also raised, and are presented by the assignments.

As already suggested, the only ground relied on for recovery is the implication, claimed to arise, of authority or ratification from acts of various persons which it is insisted should bind defendant. Those facts and acts were substantially these :

The most important, according to plaintiff's argument, was the employment of plaintiff in 1882 upon the construction of two bridges along the line of the railroad. It was claimed that plaintiff made a contract with Howard for the construction, under plans which Howard furnished, rendering monthly bills to the assistant engineers, Mr. McCormick and Mr. Nettleton, against defendant, and paid by Mr. Carroll, as plaintiff claims, as defendant's paymaster. It is further claimed that in those transactions blanks were used purporting to be defendant's; that after these bridges were finished, plaintiff was informed by Howard that he was desired to make bids on depot buildings, which were accepted by Howard; and that De Bevoise also informed him that Howard had been directed to get bids and complete a contract.

Plaintiff was allowed to put in evidence, and relied upon, the facts that rights of way and aid subscriptions were pro-

cured by defendant's officers, and that ties were purchased and delivered by one of them, and that bills of various kinds were paid by Mr. Carroll for work and other things made out in the defendant's name.

These various matters, upon most of which there was contradictory or explanatory testimony, were received as showing authority in Howard to bind defendant in this contract. Howard's own testimony, as well as that of several others, was directly contradictory of plaintiff's in its material features, but, so far as admissible, its weight would be for the jury.

Upon a careful examination of the record, we think the defendant was entitled to have the case taken from the jury, as entirely unsupported by legal proof.

There is not in any part of the record any testimony tending to show that Howard had any authority to make contracts of the kind involved for defendant. The contract as sworn to by plaintiff is a peculiar one, which, when made, according to him, specified neither the number nor the locality of the various depot buildings, nor at what places the first and second class buildings, which varied considerably in price, were to be set up. The memorandum of the verbal understanding on which plaintiff bases his claim contains no time for doing the work, and no terms of payment except the gross sums for building.

It appears from plaintiff's testimony that, pending the preparation and consideration of proposals and bids, he received a letter from Howard indicating that a written contract was contemplated; and that he also knew that De Bevoise was Howard's superior, under whose direction Howard was to act in regard to the depots; and that on the eighteenth of May, De Bevoise, who had never recognized the contract, told him Howard had no authority to make it. It further appears from his testimony that, while he was seeking to be allowed to carry out the project, he corresponded with De Bevoise, and knew from him that authority to proceed must come from the New York parties; and that he also wrote to the president of the investment company repeatedly, insisting on the liability of that company for Howard's acts.

It is certain that no presumption can arise of any power in a chief engineer, even where a railroad company is acting in the completion of its own road, to make such a contract is the one relied upon here.   The definite location of depots as one of the most important duties of the company, and belongs to the board of directors unless clearly delegated elsewhere.   A chief engineer cannot be made the possessor, by delegation, of the double power of locating and contracting for building them, if he can be at all, without the authority of the board, on which the railroad law imposes the duty of conducting the corporate business.   And we have held that the action of such a board cannot be deduced from anything but their concurrent doings, and that no one has a right to rely on the statements of an agent concerning his own agency.   *Trudo v. Anderson,* 10 Mich. 357; *Kornemann v. Monaghan,* 24 Id. 36; *Grover & Baker Sewing Machine Co. v. Polhemus,* 34 Id. 247; *Reynolds v. Continental Ins. Co.,* 36 Id. 131; *Bowen v. School District No. 9 of Rutland,* Id. 149; *Michigan Paneling Co. v. Parsell,* 38 Id. 475; *Rice v. Peninsular Club of Grand Rapids,* 52 Id. 87; *Hotchin v. Kent,* 8 Id. 526; *Wells v. Martin,* 32 Id. 478.

There is no testimony concerning authority traced to any other source but De Bevoise, and there is no testimony that he had, or pretended to have, any authority himself except from the investment company.   The case is entirely bare of any proof that Howard had authority to act in behalf of defendant in making such a contract as the one sued on.   He denies both contract and authority.

The case is just as devoid of any proof of ratification by defendant.   No depots were built by plaintiff, and no action was had by defendant's board of directors, or by any one lawfully representing defendant, recognizing the contract as in existence.   And we are unable to see how plaintiff could avoid the effect of his own dealings and transactions with De Bevoise and the investment company, indicating that he looked to authority in Howard as derived from that source.

The fact that defendant was engaged in procuring aid and

rights of way had no tendency to show that it was building its own road, or that any particular person employed in that work was doing so as a servant of defendant. The general railroad statutes contemplate, what is matter of almost universal experience, that such work is usually done by contractors, and special remedies are provided for on that assumption. How. Stat. §§ 3423–3425. It is the duty of every one to inform himself with what parties he is dealing, and there is never any practical difficulty in doing so in such cases. If a person chooses to act without a written contract, or without adequate inquiry, the fault cannot be thrown upon a principal who never authorized such a contract to be made.

The utmost that could be claimed by way of presumptive authority could derive no more force from the acts of individuals than from their personal promises or assurances, had such been shown. There was no legal evidence in this case that showed the building of the bridges, or any other of the acts relied on, to have been corporate acts of defendant. There was distinct and uncontradicted evidence, which the jury should not have been allowed to disregard, that they were not.

The acts or declarations of Mr. Howard, or Mr. Bennett, or Mr. Carroll, or any of the other parties concerned, could not prove their own agency or authority, and had no force for any purpose, without recognition or ratification by competent authority, to bind defendant. We cannot see how any such transactions, if authorized, had a bearing to prove authority in the contract sued on. The fact that A., B., and C. have done particular work has no tendency to show that either of them is a general agent or superintendent; and even recognition made expressly by one or any number of persons would amount to nothing, unless they could themselves have conferred the power in the first place.

When this case is stripped of its confusion and examined by the proofs, it appears to have been allowed to go to the jury upon a confused mass of circumstances, no one of which

had any tendency whatever to show either authority or ratification.

There is nothing indicating, as to this particular contract, any recognition or estoppel by any one. And, as already suggested, power to make such a contract as that sued on could not be inferred from authority fully proved to make the bridge contracts or the lesser transactions, even had they been shown to be the acts of defendant, which was not done. When it was once shown that the whole road was under contract, that put an end to any inferences of authority from defendant to any but the investment company to do any part of the work, as well as to any inferences from the acceptance or use of any part of the construction. The appropriation of what one has a right to suppose was properly done creates no estoppel. *Hotchin v. Kent,* 8 Mich. 526; *Township of Taymouth v. Koehler,* 35 Id. 22; *Morrison v. Berry,* 42 Id. 389; *Detroit & Bay City R. R. Co. v. Busch,* 43 Id. 571.

Neither is a principal, whether private or corporate, bound by the action or silence of an agent or officer outside of his powers, or where he is not acting officially. *Michigan Paneling Co. v. Parsell,* 38 Mich. 475; *Doyle v. Mizner,* 40 Id. 160.

And this is true both as to officers and directors individually. *Peek v. Novelty Works,* 29 Mich. 313; *Finley Shoe & Leather Co. v. Kurtz,* 34 Id. 89; *Wells v. Martin,* 32 Id. 478; *Bowen v. School District,* 36 Id. 149; *Kalamazoo Novelty Co. v. McAlister,* Id. 327; S. C. 40 Id. 84; *Continental Life Ins. Co. v. Willets,* 24 Id. 268; *New York Iron Mine v. Negaunee Bank,* 39 Id. 644; *Highway Commissioners v. Van Dusan,* 40 Id. 429; *Kornemann v. Monaghan,* 24 Id. 36; *Bottomley v. Port Huron & N. W. Ry. Co.,* 44 Id. 542; *Lockwood v. Thunder Bay River Boom Co.,* 42 Id. 536.

A good deal of stress was laid upon the use by Mr. Carroll of blank letter-heads, in which he describes his office as paymaster of the Pontiac, Oxford & Port Austin Railroad. He did not, however, describe himself as paymaster of the company, and he was in fact paymaster in all the business pertaining to the construction of the road. But while this

description might create some confusion, it is sufficient to say that he is not shown either to have represented the company, or to have been recognized in any way as its agent. And, furthermore, the action of such an officer in making payments could not enlarge his authority, or indicate anything more than that he considered himself entitled to pay what he did pay.

In *Wells v. Martin*, 32 Mich. 478, it was held a paymaster could not bind the company by agreement or ratification. If he had been in fact a company agent, his powers could not go beyond his agency. He denies, in fact, any power to act for defendant, and that testimony stands uncontradicted. But the burden was on plaintiff. See, also, *Mink v. Morrison*, 42 Mich. 567; *Canadian Bank of Commerce v. Coumbe*, 47 Id. 360; *Danaher v. Garlock*, 33 Id. 295; *Bowen v. School District No. 9 of Rutland*, 36 Id. 149; and cases above.

There would be no profit in considering the other questions, as most of them are more or less dependent on similar principles, and it is evident that if any one is responsible it is not defendant.

Judgment must be reversed, with costs, and a new trial granted.

SHERWOOD and CHAMPLIN, JJ., concurred. MORSE, J., concurred in the result.