SOMERVILLE v. WABASH RAILROAD CO.

PRINCIPAL AND AGENT—UNAUTHORIZED ACT—IMPLIED RATIFICA-TION.

A railroad company will not be held to have ratified the unauthorized hiring, by one of its local freight agents, of a person to assist in the detection of a thief who had stolen property in the hands of the company for transportation, by reason of the use by its detectives of information furnished by such person, leading to the arrest of the offender and the recovery of the property; such fact not constituting such an appropriation of the services of such person as to impose an obligation to pay for the same. MOORE and MONTGOMERY, JJ., dissenting.

Error to Wayne; Hosmer, J.    Submitted January 10, 1896.    Decided May 19, 1896.

*Assumpsit* by William Somerville against the Wabash Railroad Company for services rendered as detective. From a judgment for plaintiff, defendant brings error. Reversed.

*Alfred Russell,* for appellant.

*John G. Hawley,* for appellee.

HOOKER, J.    In the above cause the plaintiff relied upon a contract for detective services made with Tozer, a local freight agent, and recognition and co-operation by a special detective of the Wabash Railroad Company in detecting a thief who had stolen property in the hands of the company for transportation.    This, and a failure to receive an answer to a letter, written by his attorney to the superintendent of the company, stating his employment by Tozer, the rendition of the service, and a demand for payment, constitute all the evidence upon which the verdict was based.    It appears that neither Tozer nor Sollitt had authority to employ the plaintiff by virtue of their respective offices, and there was no evidence that they had special authority.    The service performed appears to have been a communication of the fact that if the detectives of the road would find the owner of a certain white-faced horse they would find the thief, and that from this information the thief was apprehended and convicted.

It is a general rule that agency cannot be proved by the acts of the alleged agent, and there is nothing to indicate a ratification.    If it is true that the detectives of the company made use of the information to arrest and convict the offender and to recover the property, which they succeeded in doing, those facts constitute no such appropriation of the services of the plaintiff as to impose an obligation to pay for his services.    To hold otherwise

would be to say that the act of the agent in availing himself of the information was more potent in the way of imposing an obligation upon his master than his express promise would have been.

I think the judgment should be reversed, and a new trial ordered. It is so ordered.      -

LONG, C. J., and GRANT, J., concurred with HOOKER, J.

MOORE, J. (*dissenting*). The defendant, for a considerable time, had been suffering from the depredations of thieves. Plaintiff was a detective of 20 years' experience, employed in that capacity by the Lake Shore Railway Company, said employment having extended over a period of 5 years. Somerville heard of the losses the Wabash Company was suffering, and went to the company's local freight agent, one Tozer, and offered his services in securing the apprehension and arrest of the thieves. Tozer inquired what plaintiff's services were likely to be worth, and was told that a fair estimate of them could not be made at that time, and it was agreed that the best way was to wait until the services had been rendered, and estimate their value according to their degree of success. Tozer, however, told Somerville that the Wabash Company would pay him any reasonable claim if he should succeed in breaking up the gang of thieves. A day or two after this conversation, Somerville received a dispatch from Tozer, asking him to meet Mr. Ellis, a Wabash detective, and to co-operate with him. Somerville and Ellis met accordingly, and went to Tozer's office, where the matter of 13 sacks of coffee, recently stolen, was talked over. The following day Ellis told Somerville that he had sent for Mr. Sollitt, another Wabash detective, who was Ellis' superior, but not the head of the Wabash detective system; that position being held by Mr. Furlong. The record discloses that Sollitt took his orders from Division Superintendent Gould, or from Furlong. Sollitt came to Detroit, and, after talking with Somerville and Ellis, told the latter to stay

and act under Somerville's direction, and that he (Sollitt) would stand between him (Ellis) and any harm from the road, if he did just what Somerville told him. After Sollitt's departure from Detroit, Somerville, who had received information of a new robbery of eight sacks of coffee, but not from any one connected with the railroad, communicated this fact to Ellis, and together they went to the superintendent of police of Detroit, and obtained the services of an experienced detective to act with Ellis in recovering this coffee and arresting the thief. Acting upon the information which Somerville furnished, Ellis and the other officer succeeded in discovering the coffee and arresting the thief, who was convicted, and sentenced to the state prison for three years. Somerville presented his bill for services to Tozer, but could obtain no settlement of his claim, and accordingly brought suit, and obtained judgment for $300. Defendant brings error.

The important question in this case is, was there sufficient evidence of contract relations between the plaintiff and the defendant to justify the judge in submitting the case to the jury?

It is contended by the counsel for defendant that the plaintiff made no contract with any of the detectives of the road; that, if he had, it would not be a valid contract, for want of authority on their part to make it. Counsel further claims that the only contract made by the plaintiff was made with Tozer, the local freight agent, who had no authority to make a contract of this character, and that there has been no ratification of what either Tozer or the detectives may have agreed to with the plaintiff, and that the judge erred in not giving the several requests of the defendant and in not taking the case from the jury. He insists that it is a cardinal rule of law that full knowledge of the facts and circumstances must exist in order to find ratification, and that there is no testimony that the head of the defendant's detective department had any knowledge of Tozer's agreement with the plaintiff;

and cites *Hotchin* v. *Kent*, 8 Mich. 526; *Wells* v. *Martin*, 32 Mich. 478; *Danaher* v. *Garlock*, 33 Mich. 295; *Bond* v. *Railroad Co.*, 62 Mich. 643.

The case of *Hotchin* v. *Kent* decides that, in an ordinary commercial partnership, any act of one partner with innocent parties, within the scope of the partnership business, will usually bind the firm, yet any contract made without the scope of the business, with a person who knows, or is bound to know, that it is beyond that scope, will not bind the firm, of its own force, without some express or implied adoption; that an unauthorized agent cannot ratify and make valid his own void act.

The case of *Wells* v. *Martin* decides that the statement of an agent of a contractor, to a third person, that the contractor intended to pay a bill made by a subcontractor, is no evidence of a ratification by his principal of authority in the subcontractor to make the debt, so as to bind the contractor. To the same effect is the case of *Danaher* v. *Garlock*.

In *Bond* v. *Railroad Co.* plaintiff sued to recover on an alleged verbal contract, whereby he was to have the building of 14 depot buildings, for which he made preparation, but which, he claimed, he was not allowed to complete. The record disclosed, and it was not disputed, that the defendant road had, prior to the time Bond had any talk with any one about constructing these buildings, made a contract with the New York, New England & Western Investment Company to build most of the road, including the depot buildings. There was nothing in the record to show that the person with whom Mr. Bond talked had any authority to act for the defendant road, or that it ever did anything to ratify any of the acts or agreements made with Bond. Under the facts in the case the court held a verdict should have been directed for the defendant.

We do not think, however, that any of these cases necessarily decide the case at issue in favor of the defendant. They are not in conflict with the doctrine that the

unauthorized acts of an agent may afterwards be ratified by the principal, either expressly or by implication, so as to bind the principal.

If there was testimony sufficient to submit the case to the jury, none of the assignments of error are well taken.

It is true that no positive and direct evidence has been introduced by the plaintiff that he made a contract with one having authority to make it. Nor is there any positive and direct evidence that the contract made between him and Tozer, the freight agent, was ratified by the detective department of the defendant's road, whose duty it was to look after crimes committed against the property of the road or property intrusted to its care. Suppose the station agent of defendant company had agreed with a farmer that, if he would furnish the road with a thousand oak ties, he should be paid what they were worth, and the agent introduced the farmer to a man who was said to be a tie inspector of the road, and the inspector informed the farmer about the lengths and sizes the ties should be and where to deliver them; that later the farmer, acting upon such instruction, delivered the ties, and they were put into the defendant's roadbed. Suppose, further, that the bill for the ties was never paid, and the farmer sued to recover for their value, and was unable to make direct and positive proof of the authority of the station agent and the inspector to buy ties for the road,—would counsel claim that his case must fail for that reason, and that there was no evidence, either of authority to make the contract or of its ratification by the company, and that the company should have the ties and not pay for them? There was evidence tending to show that defendant company was greatly annoyed by thefts of merchandise at Delray; that plaintiff was consulted by the station agent in relation to discovering the thieves; that Tozer undertook to make an arrangement with Somerville by which the latter should contribute to the road his services, and should be paid what they were reasonably worth; that Somerville was intro-

duced to detectives of the road, and was advised with by them in relation to the work the defendant road wanted done by him.   There was also testimony tending to show that he did the work he was employed to do; that it resulted, in connection with the work done by the detectives of the road, in accomplishing just what the company wanted done.   It was claimed that the thieving in Delray was stopped; the defendant company recovered eight bags of coffee stolen; and the thieves were arrested, and one of them convicted, and sent to prison.   If the jury found these to be established facts, do they not tend to show ratification by the company of the contract made with Somerville?   Is it the law, or is it right, that the company should have these services, appropriate them to its own use, and profit by them, and yet not be required to pay for them?   As we understand the law, it is to the effect that the authority of agents may be established by acts, facts, and circumstances, as well as by direct proof.   *Lyell v. Sanbourn*, 2 Mich. 109;   *Van Vranken v. Union News Co.*, 78 Mich. 218;   *Peine v. Weber*, 47 Ill. 41.   It is also a rule of law that the acts of an agent assuming to have authority may be ratified, and this ratification proved by evidence that the principal has accepted the benefits of the contract made by the agent.   *Bacon v. Johnson*, 56 Mich. 182; *Heyn v. O'Hagen*, 60 Mich. 150; *Busch v. Wilcox*, 82 Mich. 315.

The charge of the trial judge, bearing upon this portion of the case, reads as follows:

"The evidence in this case on the part of the plaintiff shows that the plaintiff, having received information that if a reward was offered he might procure information which would lead to the arrest of some party or parties who were thieving from the Wabash Railroad, communicated that fact to Mr. Tozer, the local freight agent at Detroit.   He (Somerville) was bound to know at that time, or bound to ascertain, the position of Mr. Tozer, and was bound to know that there was no presumption of authority that Mr. Tozer might make a contract with him with reference to that.   And if, gentlemen of the jury,

there was nothing more in this case than these facts, then I should charge you that your verdict in this case should be for the defendant.   However, gentlemen, as I said before, corporations can act only through agents, and if a contract is made with an agent who has no authority, and is afterwards communicated to those who are authorized to make such contract, there can be what we call in law a 'ratification,' and if a party making a contract without authority is afterwards recognized by those authorized to ratify the contract, and the contract is entered upon, the jury may imply such ratification.   Now, in the case at bar I do not say, nor do I mean to intimate, that there is a ratification, but there is evidence to go to the jury upon which, I think, the jury may or may not infer, as they in their good judgment must determine, whether the unauthorized contract of Mr. Tozer was or was not ratified by the company.   The evidence in this case shows that Mr. Tozer said, I think, that he would send for detectives, and afterwards wrote Mr. Somerville, or communicated with Mr. Somerville, to meet the detectives of the road.   I think, gentlemen of the jury, that from these facts, if you find from the facts that the secret service or the detective department of the road—those in charge of that—Mr. Furlong, or whosoever was in charge of that, had a knowledge of what Mr. Tozer had done, and afterwards sent the detectives to carry out the arrangement that Mr. Tozer had made, there would be such a ratification of the contract as would enable Mr. Somerville to recover.   But, of course, before you could imply a ratification, you must be satisfied from the evidence in this case that those who were authorized to make a contract of that kind had a full knowledge of what Mr. Tozer had done; because, gentlemen of the jury, there can be no ratification unless there is a full knowledge of that which is to be ratified."

We think this charge was a correct statement of the law as applicable to the facts; that there was sufficient evidence to warrant the trial judge in submitting the case to the jury.

The judgment should be affirmed, with costs.

MONTGOMERY, J., concurred with MOORE, J.