[No. 8447.  Department One.  May 23, 1910.]

TACOMA EASTERN RAILROAD COMPANY, *Appellant*, v.
HERMAN SMITHGALL *et al., Respondents.*[1]

EMINENT DOMAIN—PUBLIC NECESSITY—FINDING—CONCLUSIVENESS
—ANSWER.  After an adjudication of public use and necessity in a
condemnation proceeding, an answer alleging that the appropriation
was sought for other and ulterior purposes is irrelevant, and it is
error to refuse to strike it out, where its manifest purpose and
tendency was to prejudice the jury.

SAME—RIGHTS TO BE ACQUIRED—STIPULATION—DAMAGES.  A rail-
road company seeking to condemn a right of way, may, when the
owners making an unanticipated claim to special damages by reason
of injury to a reservoir site and water power, limit the rights sought
to be acquired by filing a stipulation or waiver respecting the use of
the site, thereby reducing the special damages claimed; and it is
error to refuse to instruct the jury that they should take the stipu-
lation into consideration in determining the amount of the award.

WATERS AND WATER COURSES—RIPARIAN RIGHTS.  An upper ripari-
an owner may not impound all the waters of a natural water course
for fourteen hours out of every twenty-four without the consent of
lower proprietors or the condemnation of their rights.

Appeal from a judgment of the superior court for Lewis
county, Rice, J., entered October 11, 1909, upon the verdict
of a jury assessing damages in a proceeding to condemn land
for railroad purposes.  Reversed.

*Hayden & Langhorne,* for appellant.

*A. H. Garretson,* for respondents.

RUDKIN, C. J.—This proceeding was instituted by the Ta-
coma Eastern Railroad Company to condemn and appropri-
ate a right of way 100 feet in width through certain lands
owned by the defendants, for railroad purposes.  The jury
returned a general verdict in favor of the defendants in the
sum of $1,822.66, accompanied by the following special find-
ings:

[1]Reported in 108 Pac. 1091.

"First, What do you find to be the damage to the land in question, by reason of the taking of that part thereof by these proceedings in the ordinary natural state, irrespective of the proposed reservoir and the flow of water and granite quarry thereon located?

"Second. What damages do you find in addition to the taking of the land in question by the plaintiffs herein, as asked for in addition to what the defendant would suffer, were the land in its natural condition devoid of water and the granite quarry thereon?

"Third What damages do you find the defendant is entitled to recover by reason of the taking of the land by the plaintiff in these proceedings on account of the granite quarry, irrespective of the land in general and the flow of water?

"Fourth. Do you consider in the making up of the estimate that the value of said granite quarry is largely increased, owing to the natural flow of water upon the premises, sought to be taken by the plaintiff herein, and the reservoir facilities for the storing thereof? If so, what increased amount do you place upon said quarry by reason of water facilities over and above what the normal value of the quarry would be without the use of said water for working purposes."

"Answers to Special Interrogatives: (1) $283.50. (2) $539.16. (3) None. (4) Yes—$1,000."

A motion for a new trial was denied, and from a judgment on the verdict, this appeal is prosecuted. The facts, so far as deemed necessary to a proper understanding of the errors assigned, will appear in the course of the opinion.

On the 30th day of August, 1909, an order was entered, adjudging that the contemplated use was a public one, and that the public interests required the prosecution of the enterprise. Thereafter, and at the opening of the trial before the jury, the respondents tendered and filed an answer containing the following allegations:

"That the land herein sought to be condemned is not being taken by the petitioners, for the sole reason that they require the same for a more appropriate right as to interfere, with, delay and in part destroy the efficiency and use of re-

spondents' land for the purposes hereinafter mentioned. And is therefore unreasonable, unnecessary and not a proper taking of the land as contemplated by its right of eminent domain.

"That the respondents believe and allege that the said line is being located and built in large part, as to destroy the efficiency and use of a valuable water power, now being and existing on the respondents' land. In that they have run their lines against the protest of these respondents, through and across respondents' proposed reservoir sight on said land, and that if petitioners are permitted to carry out their plans, it will destroy in large part, the efficiency of the water power thereon existing. In that it would destroy the reservoir site, preventing the proper storage of water in the reservoir therein contemplated.

"That the respondents have upon this property a valuable quarry of merchantable granite, which can, by the proper use of the aforesaid water now existing upon said land, be quarried, mined, worked, finished and polished, and that ample power for the same can be so maintained as to make said quarry very valuable to the respondents, if unmolested as contemplated by the railroad company, petitioner herein.

"That the railroad company has already sufficient right of way, and is now operating its line over said road, as selected by its engineers as the best and most practical route for its road. That at nowhere in its petition has the said railroad company declared its intention of abandoning its former route, and that to run a second line through the land, cuts it into three separate strips, in a semicircular form, leaving the said land in an unsightly, inconvenient and almost worthless condition for agricultural purposes, and as respondents believe, for the sole purpose of injuring these respondents, without any proper recourse in damages or otherwise.

"That respondents believe and aver the fact to be that their damages in the aforesaid action, by reason of the aforesaid allegation, cannot be adequately ascertained by the jury for the reason that the said land is remote from the place of trial, so that the jury cannot personally inspect the same, and that the procuring of witnesses to testify in this cause is burdensome and expensive by reason of the fact that no one from this county can reasonably be had to go and view and

estimate the damages without great loss of time and heavy expense of travel. And therefore, this action heaps upon the respondents burdensome costs and expenses, which should be carefully considered by the jury in making up their estimate of damages."

A motion to strike this answer was interposed, but the motion was denied, and the court permitted counsel for respondents to read the answer to the jury, in the course of his argument, and to comment on its provisions, over the objection and protest of the appellant. Upon these rulings the first error is assigned. In *Seattle & M. R. Co. v. Murphine*, 4 Wash. 448, 30 Pac. 720, and *State ex rel. Ami Co. v. Superior Court*, 42 Wash. 675, 85 Pac. 669, we held that no answer is contemplated or required in proceedings of this kind, and that it is not error to strike such an answer from the files. Of course, it does not follow from this that the refusal to strike an answer in a condemnation proceeding is prejudicial error, for if the answer contains nothing improper it can do no harm. But whether an answer is proper or improper in this class of actions, the answer in question was utterly irrelevant and should have been stricken. It presented no issue, and its manifest purpose and tendency was to create a prejudice in the minds of the jury. The court had already decreed that the contemplated use was a public one, and that the public interests required the prosecution of the enterprise, and with these questions the jury had no concern. A claim before the jury that the appropriation was sought for other and ulterior purposes was entirely out of place. In *Fort St. Union Depot Co. v. Backus*, 92 Mich. 33, 52 N. W. 790, counsel for the property owner was permitted to argue to the jury that the taking of the property was unnecessary, but in reversing the judgment the appellate court said:

"It is contended, however, by counsel for respondents that the presentation of the question by argument of counsel could not have influenced the jury, as they found the question

of necessity in favor of the petitioner.   I think that ques-
tion is well answered by the learned circuit judge.   He says:
'It is not sufficient to say that the jury found for the peti-
tioner upon the question of necessity.   This does not in any
way meet the question.   The petitioner was entitled to a just
consideration of the question of compensation or damages to
be awarded.   The natural and inevitable effect of the argu-
ments made is manifest.   It would be difficult to conceive of
an argument more effective, the certain and inevitable effect
of which would be to influence the jury, and cause them to
award the most extravagant and exorbitant damages.'   The
court again remarks: 'As we have seen, the jury, although
judges of the law and fact, have no right to disregard
well-recognized legal principles, and counsel who appear be-
fore them are governed by the same responsibility which
governs them in court.'   It is the duty of the court to in-
terfere where matters foreign to the issue are rehearsed be-
fore the jury, prejudicial to the interests of a party. *Cron-
kite v. Dickerson*, 51 Mich. 178, 16 N. W. 371; *Bond v.
Railroad Co.*, 62 Mich. 646, 29 N. W. 482; *Sullivan v. Deiter*,
86 Mich. 404, 49 N. W. 261."

The argument applies with far greater force in this
state, for with us the question of necessity is determined by
the court, without the aid or intervention of a jury.   For
this error the judgment must be reversed, but in view of a
retrial of the action, the remaining assignments will be
briefly considered.

A reference to the special findings of the jury will show
that the general verdict is made up of three items.   The first
two relate to the value of the property taken and damages to
the remainder of the tract.   The third claim or item arises out
of the following facts:   The proposed right of way extends
for a distance of a half mile or more through the respond-
ents' land, along or in close proximity to the banks of a
stream called Tilton river.   The river has a fall or drop of
about 110 feet on the respondents' land, and flows sufficient
water at its lowest stage to generate 60 electrical horse
power.   It is further claimed that there is a natural reservoir

29—58 WASH.

site on the land, in which the waters of the river can be im-
pounded for 14 hours out of every 24, by the construction of
a dam at moderate cost, thus increasing the power capacity
of the stream to 145 horse power; that there is an unde-
veloped granite quarry on the respondents' land, across the
river from the proposed right of way, containing large
quantities of granite, suitable for building, paving, and other
purposes; that this quarry can be operated to advantage
and at a profit by the utilization of the water power in
question; that the reservoir site will be destroyed by the
construction of the proposed railroad grade, and that the
value of the quarry will be thus impaired. As soon as these
facts were made to appear, or rather as soon as this claim was
advanced by the respondents, the appellant, by permission of
the court, filed the following stipulation or waiver:

"The Tacoma Eastern Railroad Company, the petitioner
in the above entitled action, hereby stipulates and agrees to
and with the defendant in said action that said defendants
may have the right to dam the waters of the Tilton River
at a point on said river, below where the present located
line of the Tacoma Eastern Railroad Company crosses the
said Tilton River in the Southeast Quarter of the Northwest
Quarter (SE¼ of NW¼) Sec. 8 Tp. 13 N. R. 5 E. W. M.
said dam to be built at the head of the falls, which are situ-
ated in said river below this point, said dam not to exceed
eighteen (18) feet in heighth above the lowest point in said
river at the place where said dam is proposed to be located.
Said Tacoma Eastern Railroad Company does hereby con-
sent to the backing up and impounding of the waters of said
river over and upon its right of way and stipulates that the
construction and operation of said line of railroad will in no
way interfere with the use and enjoyment of said reservoir
to be constructed by said respondents.

"And petitioner agrees to and with the said Herman
Smithgall and his said wife, respondents in this action, that
the final decree in this case shall contain a provision wherein
and whereby all the agreements contained in this stipulation
shall be embodied therein, and shall be and become part and
parcel of the final decree to be entered in this action."

In view of the foregoing stipulation the appellant requested the court to instruct the jury as follows:

"I instruct you that the stipulation or agreement offered and received in evidence whereby the Tacoma Eastern Railroad Co., agrees to so construct its proposed line of railway over respondents alleged reservoir site as not to interfere with the proposed use of the same is binding on the railroad company, and is to be considered by you along with all the other facts in the case, *and if you find, from the evidence, that respondents will not suffer any damages by reasons of the agreement of the railroad company to so construct its road over said reservoir site as not to interfere with the use of the same then you should not allow any sum on that account.*"

The court gave a portion of the instruction, but refused the part we have italicized; and upon this ruling the second error is assigned. Ordinarily the condemning party should describe in its petition the property it desires to take, but cases will often arise where an unanticipated claim for damages interposed by the landowner may be lessened or entirely obviated by a stipulation or waiver on the part of the condemning party. The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon. *Lieberman v. Chicago etc. R. Co.*, 141 Ill. 140, 30 N. E. 544; *Oregon R. & Nav. Co. v. Owsley*, 3 Wash. Ter. 38, 13 Pac. 186; *Spokane Valley Land & Water Co. v. Jones & Co.*, 53 Wash. 37, 101 Pac. 515.

The respondents objected to the offer of the stipulation, claiming that the appellant was attempting to pay the damages sustained by stipulation rather than in money, but such is not the case. The stipulation simply limited the estate taken and permitted a joint use of the right of way by both parties. We are therefore of opinion that the requested instruction should have been given, for if no damage resulted

to the reservoir site under the stipulation, none should be returned by the jury.

The appellant further requested the following instruction:

"I instruct that before the respondents, Herman Smithgall and wife, would have the right to place a dam across the waters of the Tilton River, back up or divert the waters of said river, they would have to obtain the consent of the lower riparian proprietors or acquire their rights by purchase, as it is the law in this state that the owner of land on the bank of a stream has a natural right to the use of the waters which flow in the stream adjacent to his land as it is wont to run without diminution or alteration;"

and its refusal is assigned as error. Under the common law and the law of this state every riparian owner has a right to have the waters of a natural water course flow through his land in their accustomed channel, without unnecessary diminution or pollution by an upper riparian owner, and it seems to us that a riparian owner may not impound all the waters flowing in a stream for 14 hours out of every 24, without the consent of a lower riparian owner, or a condemnation of his rights. The lower riparian owner may require the use of the water at all times during the 24 hours of the day for some lawful purpose, and, if so, a use such as is asserted here by the respondents would be an unlawful interference with his rights. The instruction requested, or one of similar import, should have been given.

Other errors are assigned as to the amount of the recovery, but in view of a retrial of the action we do not deem it necessary to discuss them. For the errors above indicated, the judgment is reversed and a new trial ordered.

Fullerton, Chadwick, Gose, and Morris, JJ., concur.