GUTTERSON *v.* DILLEY.

1. PRINCIPAL AND AGENT — AGENCY — EVIDENCE — SUFFICIENCY — FRAUD.

In an action for fraud and deceit in the sale of lands, where the misrepresentations sued upon were made by an alleged agent of the other defendants, the owners of the land, evidence *held*, insufficient to require the question of agency to be submitted to the jury.

2. SAME—EVIDENCE—ADMISSIBILITY.

The acts and declarations of one who assumes to be acting as the agent of another are not evidence against the supposed principal until the fact of the agency is established by other evidence.

3. SAME.

The declarations of a person assuming to act for another are not admissible to prove either the existence of, or the extent of, the agency.

Error to Chippewa; Fead, J. Submitted April 24, 1918. (Docket No. 119.) Decided June 3, 1918.

Assumpsit by Gilbert Gutterson against Delmar M. Dilley, Frank Weston, and Frank P. Chesbrough for fraud and deceit. Judgment for defendants Weston and Chesbrough *non obstante veredicto*. Plaintiff brings error. Affirmed.

*Larmonth & Goetz,* for appellant.

*Wiley & Green,* for appellees.

STONE, J. This is an action for damages for fraud and deceit in the sale of certain described lands in the county of Chippewa. At the time that the claimed false representations were made by defendant Dilley, the title to the lands was in the defendants Weston and Chesbrough. These lands were purchased by the plaintiff through negotiations with defendant Dilley.

The first talk was had with Dilley in April, 1915, and the deal was finally closed in June, 1915. It is the claim of the plaintiff that in the transaction, Dilley was acting as the agent of the other defendants; that at the time of the deal with Dilley he represented to plaintiff that the Norway and white pine had mostly been cut, but that there was cedar and spruce and some hardwood left, enough to pay twice over, the purchase price that they were asking for the land; that the land which Dilley had shown plaintiff, at the time they were there to look it over, had considerable timber on it, and Dilley represented that the remainder of the land was timbered the same as that they had seen; and that they were only on the land a few hours, going where Dilley directed them to go, plaintiff taking Dilley's word as to what was on the balance. It is also the claim that some of the land which Dilley showed the plaintiff was not the land described in the deal; that Dilley told the plaintiff at that time that the other defendants, Weston and Chesbrough, were the owners of the land, and that he would get title from them. On the same day plaintiff gave defendant Dilley a check for $150, and on June 12, 1915, sent his check to the Central Savings Bank at the Soo, payable to its order, for $3,846, with exchange. This included the balance due on the lands at $2 per acre and some other items, the deal being for 2,000 acres, less $10 for railway right of way, $6 being added for one-half of revenue stamp and recording of deed. This money was turned over to defendant Weston, and he and Chesbrough deeded and delivered title to Dilley. Plaintiff's son was with him at the time they were looking over the land, and upon the trial the son corroborated plaintiff as to the condition of the land they saw, and as to the statements made by Dilley. The land was afterwards examined and there was no timber on a large part of it.

Upon the trial no objection was made by any of the defendants to the testimony of plaintiff, or that of his son, as to Dilley's statements, either as to the timber on the land, the statement as to its value, the ownership of the land, and who Dilley represented, nor was there any motion to strike out such testimony. There is no dispute in the record, and, in fact, defendant Weston testified that he received the $2 an acre for the land to close the deal with defendant Dilley. Weston was the only defendant sworn upon the trial. He testified that he did not know the plaintiff and that he did not make defendant Dilley his agent, and that he and Chesbrough dealt with Dilley as a principal and as an independent purchaser. Deeds had been made early in the year from Weston and Chesbrough to Dilley and placed in the bank for delivery upon payment of the purchase price ($2 an acre), but Dilley had been unable to raise the money to pay the purchase price. Weston's testimony was undisputed to the following effect:

"I later sold these lands to Mr. Dilley. The deeds were made out along about the 10th of January, if I remember right, in January anyway. They were turned over to the Central Savings Bank for collection, as that is the bank I do business with. The deeds were made out to Mr. Dilley at his request. I was getting $2 per acre for the land. * * * I heard Mr. Clark (cashier of the bank) testify that along in June these deeds were finally delivered. I saw Mr. Dilley in June, along about the 6th of June; he came to my office or place of business over the garage, Soo Machine & Auto Company Garage. I there had conversation regarding these lands. I said: 'You have been fooling along quite awhile on this land'; 'Well,' he says, 'I want the land still, and I will give you $150 to guarantee, as a part payment, to apply on the payment.' He paid me $150 that time. He said he had made arrangements for the money, but did not tell me where, nor from whom. He did not tell me he was going to sell the land to Mr. Gutterson. He did not tell me he had had any talk with Gutterson regarding the land."

Mr. Weston further testified· that at this time the deeds to Dilley, together with the abstract, were still in the bank; that he gave Dilley the abstract, but that the deeds to Dilley remained in the bank (after being in witness' possession for a few hours), and the bank was instructed to send them wherever Dilley requested. He further testified:

"My agreement with Mr. Dilley was that he was buying those lands from me at $2.00 an acre. That was the only agreement I had with him. That was the only understanding I had ·with him. Up to the time I received payment for the land I had never seen Mr. Gutterson, had never heard of him. I received payment for the land along the last of June through the Central Savings Bank. I did not pay to Mr. Dilley or any one else commissions for the sale of this land. I did not agree to pay any one. At the time I talked with Mr. Dilley and made the agreement with him I agreed to furnish an abstract."

A deed was finally delivered from the defendant Dilley to the plaintiff. The deeds from defendants Weston and Chesbrough to Dilley, which had been in the Central Savings Bank, were also delivered, and the chain of title was from Weston and Chesbrough to Dilley, and from Dilley to the plaintiff.

Upon the trial the testimony produced by the plaintiff upon the subject of Dilley's agency, and ·which he claims was sufficient to sustain the verdict of the jury, consisted of the following testimony of the plaintiff:

"Q. Did he (Dilley) tell you at that time who was the owner of the land?

"A. Yes, sir.

"Q. Whom did he say was?

"A. Weston and Chesbrough. I have never met either Mr. Weston or Chesbrough. After that he furnished me with an abstract of the property. * * *

"Q. What was said, if anything, at that time as to whom you were getting your title to the property from?

"*A*. Why, he said that he was representing Chesbrough and Weston and that they had made some arrangements with the Central Savings Bank that Dilley would be—that I could correspond with the Central Savings Bank, and if the title was satisfactory to send the balance of the money to them, and I sent it."

It was testified to that this statement was made by Dilley at the time they were out looking over the land described in the declaration. Also the following:

"He (Dilley) said to me at Trout Lake when I asked him about whom I should make the first check payable to, that I might as well make that to him, and he also said that Weston and Chesbrough might want to handle the whole deal through him, so that he would give the deed instead of them, which I said was immaterial to me, and he said that the bank had it in charge, and that I was to send the balance of the money to the bank."

At the close of the plaintiff's case, a motion was made on behalf of defendants Weston and Chesbrough for a directed verdict in their favor, upon the ground, among others, that no agency between the defendant Dilley and the defendants Weston and Chesbrough had been shown. This motion was refused at that time, and the defendants duly excepted. At the close of all the testimony this motion was renewed for the same reason, and the court announced that the question would be reserved and disposed of under the statute. (Act No. 217, Pub. Acts 1915, 3 Comp. Laws 1915, § 14568 *et seq.*)

The case was submitted to the jury, and a verdict of $2,000 damages was returned against all of the defendants.

After verdict the court considered the question whether a judgment should be directed in favor of the defendants Weston and Chesbrough notwithstanding the verdict of the jury. The learned circuit judge, after listening to the arguments of counsel, reached

the conclusion that there was no evidence of the agency of the defendant Dilley, and directed a judgment to be entered against the defendant Dilley, but in favor of the defendants Weston and Chesbrough.

The plaintiff has brought the case here upon writ of error, and while there are a number of assignments of error, counsel for appellant very properly say that the questions raised under the various assignments of error may very properly be considered together, as there is really but one question, viz.:

"Was there sufficient evidence as to Dilley's authority to act for Weston and Chesbrough, to require the question to be submitted to the jury, and their verdict allowed to stand?"

It was the opinion of the circuit judge that the evidence wholly failed to show a right of recovery as against the defendants Weston and Chesbrough, and he said:

"Upon the proposition of the agency of Mr. Dilley for the other defendants, the facts in this case show beyond any question that, at the time he made the misrepresentations he was not their agent. The representations were made in April, at a time when Mr. Dilley occupied the relation of vendee, or prospective vendee, to the other defendants.

"There is absolutely no testimony of any kind which would connect Mr. Dilley with the other defendants as their agent, at the time the representations were made. The deal was not completed until June. At that time, according to the testimony of Mr. Weston, which is undisputed, Mr. Dilley was still in the relationship of vendee, and had made a payment of $150 upon the purchase price of the land. The question of whether he was acting as agent for the other defendants under an implied agency, must be determined, not by his own acts, but by the acts of the principals, and there is absolutely no testimony from which it can be inferred, so far as the acts of the principals are concerned, that Mr. Dilley was their agent. * * *

"There seems to me in this case to be an absolute

lack of testimony which would connect Weston and Chesbrough with the deal as principals of Dilley, or Dilley with them as their agent, or that connects the plaintiff, Mr. Gutterson, and the defendants, Weston and Chesbrough, in any way. During the whole of the transaction he was occupying the position of vendee, not as agent, and when we view the acts of the principals, upon which the proof of agency must rest, there is no testimony upon which it can be said that they were either authorizing or ratifying Dilley's acts as their agent."

We have examined the record with care and fail to find any evidence of the agency of the defendant Dilley. The plaintiff purchased from Dilley and received a deed from Dilley. In his letter to the bank, of June 12, 1915, he stated that he was inclosing his check to pay for lands bought from the defendant Dilley, on which he had already paid $150.

Counsel for appellant, in their brief, state that no statute prohibits the introduction of hearsay testimony, and when it is admitted without objection, it is not an abuse of discretion on the part of the trial judge to refuse to strike it out, citing *McWilliams* v. *Railway Co.*, 146 Mich. 216. The headnote of that case reads as follows:

"Where plaintiff, without objection, testifies to matters favorable to his case, which are objectionable as hearsay, and defendant on cross-examination brings out further details of the same matters, refusal by the court to strike such testimony is discretionary, it having been received without objection."

That language was used with reference to a train conductor, and no question was raised as to his being the conductor of the train of the defendant in the case, and he was a witness in the case and testified fully.

The infirmity with the instant case is not that the testimony of the plaintiff to what was said by the defendant Dilley, as to whom he represented, was

merely hearsay, but that the testimony was not supported by any further evidence of the authority of Dilley to represent the other defendants. Save in the order of proof, it would not be objectionable for the plaintiff to testify to the statements of defendant Dilley as to whom he represented, the ownership of the land, the timber, etc., if it had been followed by other evidence showing the authority of Dilley to act as the agent of the other defendants, and to represent them in the transaction. The difficulty is, that when the testimony in the case was closed, there was no proof of the authority of the defendant Dilley as agent. It is elementary that the acts and declarations of one who assumes to be acting as the agent of another, are not evidence against the supposed principal until the fact of the agency is established by other evidence. Had there been evidence establishing the agency, such statements might have had probative force, but Dilley's own statements cannot be received to establish his agency. The declarations of Dilley could not prove his own agency, or authority, and had no legal force to that end, so as to bind the other defendants. The declarations of a person assuming to act for another are not admissible to prove either the existence of, or the extent of, the agency. An agent cannot prove his agency or its extent by his own declarations. It is hardly necessary to cite authority upon so elementary a proposition. However, this court has frequently spoken upon the subject. *Grover & Baker Sewing Mach. Co.* v. *Polhemus,* 34 Mich. 247; *Hatch* v. *Squires,* 11 Mich. 185; *Bacon* v. *Johnson,* 56 Mich. 182, and cases cited; *Bond* v. *Railroad Co.,* 62 Mich. 643, 648, 649; *Ward* v. *Dunnebecke,* 184 Mich. 703; *Underwood* v. *Town, ante,* 55.

A person certainly cannot confer authority upon himself or make himself agent, merely by saying he is one. 1 Mechem on Agency (2d Ed.), §§ 285-291;

1 R. C. L. p. 511, and cases cited; 1 Am. & Eng. Enc. Law (2d Ed.), p. 690, and cases cited in note; *Southern Railway Co.* v. *Grant,* 136 Ga. 303; *Paulton* v. *Keith,* 23 R. I. 164 (54 L. R. A. 670).

The learned circuit judge might very properly have directed a verdict in favor of the defendants Weston and Chesbrough in the first instance. In our opinion he did not err in entering judgment in favor of those defendants upon motion.

The judgment of the circuit court is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.